**Rhonda Rena HALBERT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–93–00379–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 14, 1994.

Discretionary Review Refused Oct. 26, 1994.

Sandy C. Robinson, III, Houston, for appellant.

John B. Holmes, Jr., Rikke Burke Graber, Harris County, for appellee.

Before OLIVER–PARROTT, C.J., and HUTSON–DUNN and MIRABAL, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

This is an appeal from a conviction of voluntary manslaughter. Appellant was charged with murder, the jury found appellant guilty of the lesser included offense of voluntary manslaughter and assessed punishment at five-years confinement. We reverse.

On March 1, 1989, appellant was at her grandmother's house with her live-in boyfriend, Floyd Herbert Clark, Jr. (Clark) and two of her children. Appellant left the house and walked to a store a block away to buy some pink champale, leaving the two children with her boyfriend. Appellant did not have enough money to purchase the champale so she returned to her grandmother's house to get her purse. Clark was sitting in the living room when appellant entered the house. As

she picked up her purse, Clark grabbed it from her and told her she wasn't going anywhere and he "was going to beat her ass." Appellant asked Clark to return her purse, but he would not. Appellant then went into her grandmother's bedroom to get some change out of a piggy bank. Clark followed appellant into the bedroom, took the piggy bank away from her, and returned to the living room.

Appellant retrieved a .38 handgun from her grandmother's bedroom and went back into the living room where Clark was seated on a sofa. Upon seeing appellant re-enter the living room with a gun, Clark got up off of the couch and slowly walked toward appellant. Clark told appellant that if she didn't kill him, he was going to kill her. As Clark walked toward her, appellant backed up eight to ten feet into the kitchen, and she shot Clark between the eyes.

Officer Hicks of the Houston Police Department was the first on the scene. As he drove up to the house, appellant came running out stating, "I just shot my boyfriend in the head. Please help him. Don't let him be dead." Officer Hicks found no sign of a struggle or any signs of physical abuse on appellant. Sergeant West took a statement from appellant at the police station in which she said she had not been beaten by Clark on the day of the shooting. During this statement, appellant stated that Clark had grabbed her and squeezed her before, but never beaten her. However, Officer Hicks stated in his offense report that "[d]uring the investigation before homicide arrived the suspect stated she shot the complainant for fighting her."

■ In her third point of error, appellant asserts that the trial court committed reversible error by refusing to give the jury an instruction on self-defense when appellant

had presented self-defense evidence during trial and requested such an instruction. Appellant correctly states the general proposition that a defendant is entitled to an instruction on every defensive issue raised by the evidence. *Hayes v. State,* 728 S.W.2d 804, 807 (Tex.Crim.App.1987) This is true regardless of whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of this evidence. *Id.; Mullins v. State,* 767 S.W.2d 166, 168 (Tex.App.—Houston [1st Dist.] 1988, no pet.). A defendant's testimony alone may be sufficient to raise a defensive theory requiring an instruction in the jury charge. *Dyson v. State,* 672 S.W.2d 460, 463 (Tex. Crim.App.1984); *Pierini v. State,* 804 S.W.2d 258, 260 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). Therefore, we must review the testimony to determine if it required the submission of the self-defense instruction.

■ It is undisputed that appellant used deadly force in shooting Clark. Under the Penal Code, a person is justified in using deadly force against another when three conditions are all satisfied: (1) if she would be justified in using force against the other under section 9.31 of this code;[1] (2) if a reasonable person in the actor's situation would not have retreated; and (3) when and to the degree she reasonably believes the deadly force is immediately necessary to protect herself against the other's use or attempted use of unlawful deadly force. Tex.Penal Code Ann. § 9.32 (Vernon Supp.1994). Appellant is entitled to a jury instruction on self-defense only if she presents some evidence on each of these conditions. *Dyson,* 672 S.W.2d at 463; *Johnson v. State,* 715 S.W.2d 402, 406 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd).

1. Tex.Penal Code Ann. § 9.31 (Vernon 1974). Self–Defense

(a) Except as provided in Subsection (b) of this section, a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

(b) The use of force against another is not justified ...

(4) If the actor provoked the other's use or attempted use of unlawful force, unless:

(A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

(B) the other nevertheless continues or attempts to use unlawful force against the actor.

Appellant put forth sufficient evidence to meet the requirements of section 9.32. Appellant testified that Clark had physically assaulted her in the past. Dr. Parungao, the medical examiner, stated Clark weighed at least 186 pounds and was "well-developed and well-nourished," while appellant weighed only 126 pounds at the time of the killing. Appellant testified that before she got the gun, Clark threatened to "beat her ass." According to appellant's testimony, after Clark saw the gun, he came towards her and said "If you don't kill me, *I'm going to kill you.*" She later testified:

> I believed at that time that my life was in danger.... I was in fear of my life. He was threatening me. He also was approaching me at that time and I know he had previously beaten me before and *I honestly believed that he would have ... killed me.* Like he said, if I didn't kill him he was going to kill me and I took that very seriously.... I believed him because he had physically harmed me before and I knew he was bigger than I was and he was very capable of doing it.

■ This testimony satisfies the criteria of sections 9.31(a) and 9.32(3)(A). The mere fact that she believed he would attack her is insufficient to give rise to a right to a self-defense instruction. *Preston v. State,* 756 S.W.2d 22, 25 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). However, this belief along with evidence of overt acts or words that would lead appellant to reasonably believe she would be attacked is sufficient to satisfy the statute. *Id.* Appellant testified Clark made verbal threats to use deadly force, which the appellant believed, while he advanced on her. As this Court has previously stated, "Appellant testified [the deceased] told her he was going to kill her, and she believed he would. This was enough to raise the issue of whether the appellant was entitled to use deadly force ... [under section] 9.32(3)(A)." *Pierini,* 804 S.W.2d at 260. The truthfulness and reasonableness of her belief is a question of fact for the jury to decide.

■ Appellant also produced evidence supporting the condition that a reasonable person in her situation would not have retreated. Section 9.32(2). It is true that appellant could have retreated instead of getting the gun from the bedroom. However, she testified that she did not feel her life was in danger until Clark advanced on her and threatened her, *after* she returned to the living room with the gun. She retrieved the gun only to scare him, not because she felt threatened. Her duty to retreat under section 9.32 did not arise until she believed deadly force was immediately necessary to protect herself against his use or attempted use of unlawful deadly force. Appellant testified when Clark began advancing on her, she backed up into the kitchen a total of eight to ten feet. She stated that the front door was the only way out because the back door was locked and the windows had burglar bars. She would have had to pass him to get to the front door and she said "I really feel that I wouldn't have made it." *Some* evidence of the inability to retreat is all that is necessary. *See Coble v. State,* 871 S.W.2d 192, 202 (Tex.Crim.App.1993) (refusing to find error in not submitting a jury instruction on self-defense when there was *no* evidence in the record that the appellant attempted to retreat); *Werner v. State,* 711 S.W.2d 639, 645 (Tex.Crim.App.1986) (refusing to find error in not submitting a jury instruction on self-defense when there was *nothing* in the record to indicate a reasonable person 'in the appellant's circumstance would not have retreated).

■ The State in its brief insists that appellant provoked Clark and that, as a matter of law, she was not entitled to a self-defense instruction. Section 9.31(b)(4). However, appellant has presented evidence to create an issue of fact about whether she provoked Clark. In *Lockhart v. State,* 847 S.W.2d 568, 574 (Tex.Crim.App.1992), the court found no error for refusing to instruct on self-defense when the "[a]ppellant initiated the altercation" that resulted in the victim's death. Here, however, the jury could reasonably find that Clark initiated the "altercation" by taking appellant's purse.

■ Furthermore, provocation has a narrow meaning for the purposes of section 9.32. "[T]he elements of provoking the difficulty

[are] intent to provoke and act or words or both, calculated to provoke, and that did provoke." *Bennett v. State*, 726 S.W.2d 32, 35 (Tex.Crim.App.1986). This requires a specific intent to goad the victim into attacking the defendant so that the defendant can then kill or injure the victim. *Id.* at 36. In other words, the defendant, in order to have a pretext for killing or injuring the victim, must have done some act or used some words intended and calculated to bring on the attack. *Williamson v. State*, 672 S.W.2d 484, 486 (Tex.Crim.App.1984); *Jones v. State*, 192 S.W.2d 155, 157 (Tex.Crim.App.1946).

■■■ Provocation is usually a question of fact. *Dyson*, 672 S.W.2d at 463. The defendant's intent is vital in determining whether provocation has been established as a matter of law or is a question of fact for the jury. *Id.* at 464. If the defendant admits the intent to provoke or the evidence clearly establishes that intent and the defendant does not present any counter-evidence, provocation can be established as a matter of law. *See Coble*, 871 S.W.2d at 202 (finding no error in not submitting jury instructions on self-defense when the evidence at trial established from the outset that the appellant intended to kill the victim and no counter-evidence was presented); *Dyson*, 672 S.W.2d at 464 (finding that when the appellant expressly stated that his intent was to fight with his victim, no question for the jury on provocation was created).

■■■ In this case, appellant expressly testified that she did not intend to injure Clark, but only to scare him so he would return her purse. This testimony precludes deciding provocation as a matter of law. "Inasmuch as the appellant expressly denied any intent to harm [the victim] ..., the evidence created only a question for the jury on provocation." *Semaire v. State*, 612 S.W.2d 528, 531 (Tex.Crim.App.1980). Additionally, even if appellant provoked Clark's use of force, the jury may have believed that appellant clearly communicated her intent to abandon the encounter by backing-up into the kitchen; such a finding would bring appellant within the exception of Tex.Penal Code Ann. § 9.31(b)(4)(A).

The State argues that *Preston* is instructive. Preston shot the deceased after the deceased allegedly refused to turn down the stereo while Preston was taking a nap. *Preston*, 756 S.W.2d at 23. When Preston pointed the gun at the deceased, the deceased started to leave the house but Preston shot him in the back. *Id.* Preston testified that he got his gun only to scare the deceased into leaving the house. *Id.* at 25. The court stated: "[E]ven if the complainant had jumped out of the chair toward Appellant with the intention of taking the gun away from him, Appellant clearly would have provoked this kind of reaction by bringing the gun into the room and pointing it at the complainant." *Id.*

While *Preston* is similar to this case, the two are distinguishable. The court in *Preston* stated when the defendant points a gun, it can provoke the response of advancing toward the defendant "with the intention of taking the gun." *Id.* In this case, appellant testified that Clark came toward her *making threats to kill her.* Threatening to kill goes far beyond merely trying to take the gun away. In fact, the court in *Preston* specifically noted that the record was devoid of any evidence that Preston's victim took any overt threatening action. *Id.* Additionally, this statement in *Preston* is dicta because the victim in that case was not advancing on the defendant, but was attempting to leave the house. *Id.* at 23. Preston shot his victim as he was retreating; appellant shot Clark as he approached her.

■■■ Having found error in the charge to which appellant properly objected, "*any* harm, regardless of degree" is sufficient to require reversal. *Hayes*, 728 S.W.2d at 808; *Pierini*, 804 S.W.2d at 260. Appellant was clearly harmed by the lack of instruction. Her defensive strategy centered around self-defense because she did not deny the gun discharged while in her hand.

We do not condone introducing guns into domestic disputes. Guns in these situations are far more likely to cause problems than solve them. However, in this case, appellant's testimony gave her the right to have the jury decide the issue of self-defense. It

was for the jury, not the court, to determine the truth or credibility of her story.

We are of the opinion that appellant's testimony raised the issue of self-defense and that the trial court erred in overruling appellant's objection to the charge. We reiterate that the truth of appellant's testimony is not at issue here and we express no opinion on who was telling the truth. The issue is whether the jury should have been instructed to decide those facts under the law on self-defense. We hold the trial court erred in refusing to charge the jury on the law of self-defense.

*Rodriquez v. State,* 544 S.W.2d 382, 384 (Tex. Crim.App.1976).

We sustain appellant's third point of error.

■ In her first and second points of error, appellant contends that there was insufficient evidence to convict her because the State did not disprove her theory of self-defense or defense of property beyond a reasonable doubt.

In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.

*Saxton v. State,* 804 S.W.2d 910, 914 (Tex. Crim.App.1991).

A review of the facts shows that appellant admitted to Officer Hicks upon his arrival at the scene, "I just shot my boyfriend in the head." There were no signs of struggle at the scene, no signs of physical abuse on appellant, and no weapons were found on Clark. From this evidence and all the evidence detailed above, a rational jury could have found against appellant on the self-defense and the defense of property issues. Accordingly, we overrule appellant's first and second points of error.

■ In her fourth point of error, appellant contends the trial court erred by not granting her motion to dismiss the charges because she was denied her right to a speedy trial. The right to a speedy trial is guaranteed by the sixth amendment of the United States Constitution and applied to the states via the fourteenth amendment. *Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). Texas also guarantees the accused the right to a speedy trial in all criminal prosecutions. Tex. Const. art. I, sec. 10; *Chapman v. Evans,* 744 S.W.2d 133, 135 (Tex.Crim.App.1988). Whether an accused has been denied the right to a speedy trial is determined by a four-part balancing test of the following factors: (1) the length of delay; (2) the reason for the delay; (3) the accused's assertion of the right; and (4) the prejudice to the accused resulting from the delay. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192.

Appellant shot and killed Clark on March 1, 1989. Appellant was indicted on April 27, 1989. Appellant agreed to have her case reset 14 different times from May of 1989 to October of 1992. During that period, appellant requested that a new attorney be appointed and that additional time be granted for her new attorney to prepare for trial. Appellant also requested psychiatric examinations during this period. One of the agreed resets was because appellant's attorney and the State's attorney were both in another trial. Finally, both appellant and the State announced ready for trial on October 13, 1992. On January 26, 1993, jury selection began. The next day, the State requested a continuance because the crime scene officer, a necessary and material witness, was unable to appear due to the death of his infant child. The State moved for a continuance until February 8, 1993. At this time, appellant moved to dismiss for lack of a speedy trial. She had made no earlier complaint or request for a speedy trial. The length of the delay complained of was less than two weeks. All things considered, the prejudice to the accused resulting from the relatively short delay was minimal. After reviewing the record, and balancing the *Barker* factors, we find appellant's fourth point of error without merit. We overrule appellant's fourth point of error.

In her fifth and sixth points of error, appellant complains that the State's closing argument was improper. Because of our resolution of the third point of error we need not address these points.

We reverse the judgment of the trial court and remand for new trial.