Opinion issued November 20, 2008

















In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00069-CR




ASHTON JOEL CARMEN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 23rd District Court
Brazoria County, Texas
Trial Court Cause No. 51,101




O P I N I O N
           Appellant, Ashton Joel Carmen, appeals from a judgment convicting him for
the murder of his father, Reginald Carmen. See Tex. Penal Code Ann. § 19.02
(Vernon 2003). Appellant pleaded not guilty, was found guilty by the jury, and
assessed 50 years in prison by the jury. In his sole issue, appellant contends the trial
court erred by denying his request for a jury instruction on self-defense. We conclude
the trial court committed harmful error by refusing to instruct the jury on the law of
deadly force in defense of person. See Tex. Penal Code Ann. § 9.32 (Vernon Supp.
2008). We reverse and remand for a new trial.
Background
          Appellant was born with cocaine in his system, the child of a mother addicted
to the substance and of a father, Reginald Carmen, who was absent for the first years
of appellant’s life. Carmen began living with appellant when appellant was in the
first or second grade. Within a few months of moving in with appellant, Carmen
struck appellant with a belt over 70 times while appellant was naked below the waist,
causing his hospitalization and the intervention of Children’s Protective Services
(CPS). CPS temporarily removed appellant from Carmen’s custody, but appellant
was returned to Carmen after Carmen went to an anger management class. 
          According to appellant, CPS never intervened again, despite two later referrals
for excessive force. Upon reunification of appellant and Carmen, the physical
assaults resumed, with Carmen often striking the lower part of appellant’s shoulders,
his back, the lower part of his thighs, and using a fist to strike his face, back, chest,
stomach, and arm. Appellant was struck by Carmen almost every day in the form of
a “whooping” or a “beating.” For a whooping, Carmen would tell appellant to
assume the position, which meant that appellant was to lean over the bed or couch to
receive “licks.” During the beatings, Carmen would slap and punch appellant, and
sometimes wrap a belt around the neck of appellant. Carmen also deprived appellant
of food by allowing appellant only to have water for several days at a time. Appellant
told his mother about the repeated assaults and his thoughts of suicide. Appellant
said that on a couple of occasions Carmen threatened to kill him. Appellant described
a conversation with Carmen that occurred on one occasion after appellant broke into
Carmen’s bedroom. Carmen told appellant that if he took his property, he would
treat him like a thief and kill him. 
          According to appellant, on the day Carmen died, appellant broke the window
to Carmen’s bedroom to search for money because he was planning to run away. 
During the search of Carmen’s bedroom, appellant found a loaded gun. Appellant
said he “most definitely” knew that Carmen was going to kill him for breaking into
the bedroom. When Carmen arrived home with groceries, Carmen at first told
appellant to assume the position but then said instead that they were going to “up the
ante tonight.” Appellant said he understood Carmen’s threat to mean that “was going
to be worse than just the beatings he had been giving me, as far as . . . punching me
or . . . slapping me or hitting me with . . . other objects. He made it seem like it was
going to be worse.” In response to the threat by Carmen, appellant ran down the
stairs to Carmen’s room and got the gun. When the appellant approached Carmen,
Carmen threw a milk jug and a large soda bottle at appellant, striking him on the
shoulder. At that point, Carmen came toward appellant. Appellant pointed the gun
at Carmen, but Carmen “didn’t stop for a second.” Appellant testified that because
Carmen “kept on coming,” he shot the gun. Appellant explained that the did not
think he could run from Carmen “seeing as the distance he was from me because if
I would have ran out the front door, he would have . . . caught me before I would have
gotten that far.” Appellant explained that he “was terrified,” fearing that “something
bad was going to happen” because “[Carmen] had already warned [appellant] about
what actions [Carmen] would take if [appellant] did something like that.” 
          Appellant shot the gun five times, with three rounds entering the Carmen’s
back. Appellant never called for an ambulance or police, but remained at the house
for about two hours, until he left in Carmen’s car.
          At trial, appellant admitted that he previously read the owner’s manual to
Carmen’s gun to learn how to shoot it and previously practiced shooting the gun. 
Also at trial, the State presented evidence from one of appellant’s friends, Justin
Golden, who testified that appellant showed him a gun seven months before the
shooting, and told him that he planned to shoot Carmen because he no longer wanted
to live by Carmen’s rules. Furthermore, appellant’s mother denied knowledge of any
abuse.
Preservation of Error
           The State contends error is not preserved because appellant “failed to specify
the particular self-defense instruction he desired.” We conclude that error was
preserved because, under the circumstances before the court, appellant’s objection to
the omission of “self-defense” from the charge was specific enough for the trial court
to be placed on notice that he was requesting the charge of deadly force in defense of
one’s person. The self-defense request could only have meant, under the
circumstances of this case, a request for an instruction concerning self-defense with
use of a deadly weapon or deadly force, as it is commonly referred to, or deadly force
in defense of one’s person, as it is properly called in the Texas Penal Code. 
          A defendant preserves error if the requested charge is specific enough to put
the trial court on notice of the omission or error in the charge, and the requested
charge need not be “in perfect form” but only sufficient enough to bring the request
to the trial court’s attention. Chapman v. State, 921 S.W.2d 694, 695 (Tex. Crim.
App. 1996). “‘Magic words’ are not required; a complaint will be preserved if the
substance of the complaint is conveyed to the trial judge.” Bennett v. State, 235
S.W.3d 241, 243 (Tex. Crim. App. 2007). An imperfect objection is sufficient to
preserve error “if the record indicate[s] that the trial judge understood appellant’s
request to encompass the matters about which appellant now complains.” Id. at n.9
(citation omitted). 
          Here, a review of the record shows that the trial court must have actually
understood that appellant was requesting a charge of deadly force in defense of one’s
person, for two reasons. See id. First, because the Court of Criminal Appeals uses
the term “self-defense” when it is referring to the term “deadly force in defense of
one’s person,” attorneys and judges in the State also interchange the terms. See, e.g.,
Ferrel v. State, 55 S.W.3d 586, 591–92 (Tex. Crim. App. 2001) (“The State argues 
. . . that Ferrel was not entitled to a jury instruction on self-defense because there was
no evidence that McManus used or attempted to use unlawful deadly force. The State
is essentially arguing that Ferrel was not entitled to a self-defense instruction under
§ 9.32(a) of the Penal Code.”); Hamel v. State, 916 S.W.2d 491, 494 (Tex. Crim. App.
1996) (holding Hamel was “entitled to a jury instruction on self-defense” because
testimony “raised the issue of self-defense” since Hamel said “he believed deadly
force was immediately necessary to protect himself against Charlie’s attempted use
of deadly force”); Riddle v. State, 888 S.W.2d 1, 7 (Tex. Crim. App. 1994) (holding
Riddle “was not entitled to an instruction on self-defense” because “a reasonable
person would have retreated without using deadly force”); Coble v. State, 871 S.W.2d
192, 202 (Tex. Crim. App. 1993) (“[A]ppellant contends the trial court erred in not
submitting a jury instruction on self-defense. . . . The use of deadly force in
self-defense is only justified if the use of non-deadly force is justified.”); Martinez
v. State, 775 S.W.2d 645, 646–48 (Tex. Crim. App. 1989) (holding evidence failed
to raise issue of “self-defense by deadly force” after discussing that “an instruction
on self-defense” is not precluded by Martinez’s denial of any intent to kill
complainant); Bennett v. State, 726 S.W.2d 32, 38 (Tex. Crim. App. 1986) (rejecting
“the contention that the trial court’s instruction improperly limited appellant’s right
to self-defense” in holding that instruction on deadly force in defense of one’s person
was proper); Werner v. State, 711 S.W.2d 639, 644–45 (Tex. Crim. App. 1986) (“He
. . . could not have testified that he reasonably believed it necessary to shoot the
deceased in order to defend himself against the deceased’s use or attempted use of
deadly force . . . . Be that as it may, even if the self-defense issue was validly before
the jury the proffered testimony was still immaterial.”); Dyson v. State, 672 S.W.2d
460, 462 (Tex. Crim. App. 1984) (upholding exclusion of instruction on deadly force
in defense of one’s self by determining Dyson “was not entitled to an instruction on
self-defense” due to provocation by Dyson). 
          Like the Court of Criminal Appeals, we have also used the terms
interchangeably. See Guilbeau v. State, 193 S.W.3d 156, 159, 161 (Tex.
App.—Houston [1st Dist.] 2006, pet. ref’d) (reversing conviction because “appellant
was entitled to a jury instruction on self-defense by use of deadly force” since “there
was some evidence presented to raise the issue of self-defense”); Halbert v. State, 881
S.W.2d 121, 124 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d) (reversing
conviction due to failure to instruct jury on deadly force in defense of one’s self based
on point of error asserting that court erred by not instructing jury “on self-defense
when appellant had presented self-defense evidence during trial and requested such
an instruction”). It appears the reason why these terms are frequently interchanged
by justices, judges and attorneys is because the primary difference between deadly
force in defense of one’s self and self-defense is the deadly force. Compare Tex.
Penal Code Ann. § 9.31 (Vernon Supp. 2007) (entitled “Self-Defense”), with id.
§ 9.32 (entitled “Deadly Force in Defense of Person”). Attorneys and judges familiar
with decisions from state appellate courts understand that the shorthand term “self-defense” is usually all that is needed to convey that the defendant is asserting the
defense of one’s self, either with deadly force when complainant died or suffered
serious bodily injury, or without deadly force when no death or serious bodily injury
occurred.
          Second, an examination of the record shows that the trial court must have been
aware that appellant was referring to the defense of deadly force in defense of one’s
self when he requested the charge of self-defense. In deciding whether the trial court
was aware of the requested instruction, it is appropriate to examine the context of the
evidence at the trial and the issues before the trial court. See Rogers v. State, 105
S.W.3d 630, 632–41 (Tex. Crim. App. 2003). In Rogers, to explain why the trial
court did not understand that the request for an accident instruction was actually a
request for an instruction on voluntary act, the Court of Criminal Appeals stated: 
It is not at all evident from the record that the trial judge understood that
appellant really wanted an instruction on voluntary conduct. In fact, the
record suggests that the trial judge reasonably assumed that appellant
wanted an instruction on the lack of the required intent. Immediately
before the State began its cross examination of appellant, the trial judge
ruled that the State could offer extraneous offense evidence “to rebut the
defensive theory of self-defense and to rebut the defensive theory of
accident” (i.e., lack of intent to harm). Moreover, the evidence at trial
was not such that it necessarily would have put the trial judge on notice
that appellant wanted an instruction on voluntary conduct. A statement
that a defendant did not intend to pull the trigger “cannot be plucked out
of the record and examined in a vacuum.” If appellant wanted jury
instructions on what are generally inconsistent defensive theories, then
it was incumbent upon him to tell the trial court exactly he wanted.

Id. (Emphasis added). Therefore, in deciding whether the trial court understood the
request for an instruction, we must examine the record for statements by the trial
court that reflect what its understanding was, the general theme of the defense
evidence, the various defensive theories presented at the trial, and anything else that
may shed light on whether the trial court understood the objection. See id. For
example, a request for a “self-defense” instruction may not necessarily alert the trial
court the defendant is requesting an instruction on deadly force in defense of one’s
self when there is a dispute whether the weapon is a deadly weapon, or when there
are lesser included offenses to which self-defense could apply, or when self-defense
is inconsistent with another defensive theory that was presented at the trial. See id.;
Moun v. State, No. 01-06-00790-CR, 2008 WL 339748, at *2–4 (Tex.
App.—Houston [1st Dist.] Feb. 7, 2008, no pet.) (holding omission of self-defense
instruction not error “[b]ecause appellant used deadly force” by using “butcher knife”
to cause serious bodily injury to complainant; knife is not per se deadly weapon);
Ferrel, 55 S.W.3d at 591–92 (holding omission of self-defense instruction not error
because Ferrel’s use of bottle was deadly force since it caused serious bodily injury
to complainant, but noting that parties disputed whether bottle was deadly weapon
and whether court should have instructed on lesser included offense of misdemeanor
assault).


 
          Here, an examination of the record shows that the trial court must have known
that appellant was requesting the defensive charge of deadly force in defense of one’s
self. During voir dire, the State’s attorney said: 
In Murder cases, we see the defense of self-defense come up, and
basically—and in order for the defense to prove self-defense, a person’s
justified in using deadly force against another if he would be justified in
using force under Section 9.31 . . . if reasonable person in the actor’s
situation would have retreated. So, it says if you—before you ever get
self-defense, if a reasonable person would have retreated. You must
retreat before using deadly force. When and to the degree he reasonably
believes deadly force is immediately necessary to protect himself against
the other’s use or attempted use of deadly force. 

After voir dire, appellant invoked the defense of deadly force in defense of one’s self
by testifying that he shot his father with a firearm because he feared his father would
kill him. The trial court’s instructions to the jury following appellant’s testimony
gave the sole option of finding the defendant guilty or not guilty of murder caused by
a firearm, which is per se a deadly weapon, without any lesser included instructions
and without any defenses. See Tex. Penal Code Ann. § 1.07(a)(17)(A) (Vernon
2003) (specifically including firearm in definition of deadly weapon). From the
statements in voir dire, the theme of appellant’s testimony, and the limited jury charge
that had no lesser offenses or defenses, the record affirmatively demonstrates that the
trial court must have understood that the reference to self-defense was to deadly force
in defense of one’s self. 
          The dissenting opinion contends the circumstances here are like those in
Bennett, where the Court of Criminal Appeals determined that a request for a self-defense instruction did not alert the trial court that Bennett was requesting the
defensive instruction of defense of a third person or the instruction of defense of
property. See Bennett, 235 S.W.3d at 243. However, judges and attorneys do not
interchange the term self-defense with the defense of third person, perhaps for the
obvious reason that self-defense is the defense of one’s self and defense of a third
person relates to someone other than one’s self. Nor do judges and attorneys
interchange the term self-defense with the defense of property, perhaps for the
obvious reason that self-defense is the defense of one’s self and defense of property
relates to a thing. Unlike these other defenses, the common practice is for judges and
attorneys to interchange self-defense with the defense of deadly force in defense of
one’s self, because both defenses relate to the same person and the only difference is
whether deadly force was used, which is often obvious when the charge includes the
death of a person. Moreover, in Bennett, the defendant was convicted of
misdemeanor assault, which is an offense to which self-defense could apply, so that
the court would have no reason to believe the request meant anything else, as
compared to the murder here, which is an offense in which self-defense could never
apply and only the defense of deadly force in defense of one’s self could apply under
the circumstances before the court. See id. It is true that, in Bennett, the court said,
“We do not require a trial judge to mull over all the evidence introduced at trial in
order to determine whether a defendant's request for a jury instruction means more
than it says.” See id. Of course a trial court should not have to mull over every piece
of evidence to decide whether it could raise different types of defenses that are not
explicitly requested. But mulling over every piece of evidence is entirely different
from observing the sole general theme of the defense at trial. Nothing in Bennett
suggests that, in a case where there is only one defense presented and the request for
the defensive instruction is made in terms commonly understood by judges and
attorneys, a judge should be allowed to turn a blind eye to the request. See id. Here,
it is implausible to believe that the trial court did not understand that appellant was
asking for a defensive instruction of deadly force in defense of one’s self since that
was the only defense mentioned during voir dire, it was the only defense mentioned
in appellant’s testimony, and it was the only defense appellant could have been
referring to since he was charged with murder with a firearm, which is per se a deadly
weapon. 
          We hold that under the circumstances before the trial court, appellant’s
objection to the omission of self-defense from the charge was specific enough for the
trial court to be placed on notice that he was requesting the charge of deadly force in
defense of one’s person because
 
•appellate courts and practitioners use the term self-defense
interchangeably with deadly force in defense of one’s self;
 
•the only reference to self-defense by the attorneys in the trial was
in the context of self-defense with a firearm, which is per se a
deadly weapon; and
 
•the evidence concerned only the defense of deadly force in
defense of one’s self, with no fact issue whether the decedent was
killed with a deadly weapon, no lesser-included offenses, and no
other defenses presented.

          A trial court judge is not expected to, nor should he, make defensive requests
for the defense or arguments for the State. That is not the situation before us. Rather,
the situation here is an imperfectly requested defensive instruction that, under the
circumstances shown in the record, could only have been interpreted to mean a
request for what is informally called self-defense with a deadly weapon or deadly
force, which is formally called deadly force in defense of one’s person. We hold that
appellant preserved his appellate challenge concerning the trial court’s failure to
include in the jury instructions the defense of deadly force in defense of one’s person.Error Analysis
          The State contends the trial court did not err by denying the requested
instruction because (1) no evidence showed he reasonably perceived he was in danger
from deadly force by Carmen, who never attempted to use deadly force on the day of
the shooting; (2) a reasonable person in his position would have retreated; and (3)
appellant could not arm himself to seek a discussion with Carmen.
          Deadly force is justified if the defendant would be justified in using force
against the other, if a reasonable person in the actor’s situation would not have
retreated, and when and to the degree he reasonably believes the deadly force is
immediately necessary to protect himself against the other’s use or attempted use of
unlawful deadly force. Tex. Penal Code Ann. § 9.32. The use of force against
another is not justified if the actor provoked the other’s use or attempted use of
unlawful force unless the other nevertheless continues or attempts to use unlawful
force against the actor. Id. § 9.31(b)(4)(B). A defendant “is justified in defending
against danger as he reasonably apprehends it” as viewed in light of the evidence of
the overt acts and words by the complainant, and there is no additional requirement
that the jury find that the complainant was actually using or attempting to use
unlawful deadly force against appellant. Guilbeau, 193 S.W.3d at 160; see Lavern
v. State, 48 S.W.3d 356, 360–61 (Tex. App.—Houston [14 Dist.] 2001, pet. ref’d);
Halbert, 881 S.W.2d at 127; Semaire v. State, 612 S.W.2d 528, 530 (Tex. Crim. App.
1980). 
          Viewing the evidence in a light favorable to appellant, the circumstances
surrounding the shooting support the appellant’s reasonable belief that unless
appellant resorted to deadly force, Carmen would cause appellant serious bodily
injury by administering a beating more severe than the prior beating that put 
appellant in the hospital. See Guilbeau, 193 S.W.3d at 159–61 (holding trial court
erred by failing to instruct on deadly force in self-defense when evidence showed
complainant threatened to give Guilbeau “the beating of a lifetime,” Guilbeau felt
shooting “was the only thing [he] could do at that time to save [himself],” and there
was not enough time to retreat because complainant came at him “fast”); Halbert, 881
S.W.2d at 127 (holding trial court erred by failing to instruct on self-defense with
deadly force when evidence showed complainant physically assaulted Halbert in past,
Halbert feared for her life, complainant weighed more than Halbert, and complainant
came towards Halbert while threatening to kill Halbert); Semaire, 612 S.W.2d at
529–30 (holding error not to instruct on deadly force in self-defense when evidence
showed complainant threatened to shoot through door if he did not leave her door;
Semaire busted door open and stumbled into apartment; Semaire thought she was
going to shoot him when he saw her raise her hands; and there was fact question
whether Semaire provoked complainant’s attempted use of force).
          The trial court could not properly exclude the instruction by determining
appellant should have retreated because appellant’s testimony was sufficient to make
the matter of whether appellant should have retreated a question of fact for the jury.
Appellant testified that Carmen would have stopped him before he could get away. 
See Halbert, 881 S.W.2d at 125 (holding no duty to retreat because Halbert believed
deadly force immediately necessary to protect against use or attempted use of
unlawful deadly force). Therefore, some evidence shows that appellant could not
retreat and the matter of retreat should have been for the jury to decide.
          The State further says that “it could be argued” that appellant could not arm
himself to seek a discussion with Carmen. An exception to self-defense applies when
the defendant “sought an explanation from or discussion with the other person
concerning the actor’s differences with the other person while the actor was carrying
a weapon in violation of Section 46.02.”


 Tex. Pen. Code Ann. § 9.31(b)(5)(A). A
charge limiting a defendant’s right to self-defense under this section is properly given
when (1) self-defense is an issue; (2) there are facts in evidence that show that the
defendant sought an explanation from or discussion with the victim concerning their
differences; and (3) the defendant was unlawfully carrying a weapon. Bumguardner
v. State, 963 S.W.2d 171, 175 (Tex. App.—Waco, 1998, pet. ref’d). The State
misinterprets appellant’s testimony, which said that he did not obtain the gun until
after he feared that Carmen would seriously injure him. Because appellant’s
testimony shows that appellant armed himself after he feared death from the Carmen’s
actions, it should have been up to the jury to decide whether that claim was untrue
and whether instead appellant armed himself illegally when he sought an explanation
or discussion with Carmen.
          Although the State does not contend appellant provoked the incident, we note
that there was a question of fact whether appellant provoked the difficulty, because
appellant testified that he did not retrieve the gun until after complainant told him that
he was going to up the ante, which meant that he was going to be beaten worse than
the beating that had previously landed appellant in the hospital. See Dyson, 672
S.W.2d at 463 (provocation is usually question of fact); Semaire, 612 S.W.2d at 531
(holding fact question on provocation since Semaire “expressly denied any intent to
harm” complainant). 
          We hold that the trial court erred by refusing to charge the jury on the law
concerning deadly force in defense of one’s person because appellant presented
evidence to establish the justification defense. 
Harm Analysis
          The State contends that if we determine the court’s charge was erroneous, we
should find the error harmless because the evidence overwhelmingly shows that
appellant’s actions constituted premeditated murder. 
          Having determined that appellant properly preserved error by objecting to the
charge, we must reverse the conviction if appellant suffered any actual harm by the
omission of the defensive instruction. See Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985). The four-part analysis for assessing harm consists of
reviewing (1) the entire jury charge; (2) the state of the evidence, including the
contested issues and weight of probative evidence; (3) the arguments of counsel; and
(4) any other relevant information revealed by the record of the trial as a whole. Id.
          Under the first factor, we note that the jury charge gave the jury the sole option
of finding appellant guilty of murder. The charge instructed the jury to find appellant
guilty of murder if the jurors believed beyond a reasonable doubt that appellant
intentionally or knowingly committed an act dangerous to human life by “shoot[ing]
[Carmen] with a deadly weapon, to wit: a firearm. Appellant admitted this conduct,
contending that he did so to defend himself. The charge did not allow the jury to
consider any lesser offense or defensive issue. 
          In examining the evidence under the second factor, appellant presented
evidence confined to the sole theory of self-defense with a deadly weapon. The
record shows that appellant’s entire defense rested on his right to defend himself from
Carmen, a person he admittedly shot and killed. Appellant did not attempt to present
evidence of any lesser offense or any other defense other than self-defense with a
deadly weapon.
          The third factor requires that we examine the arguments of counsel. The
State’s argument emphasized that appellant admitted shooting Carmen. Appellant’s
attorney’s closing argument emphasized the harsh treatment and abuse of appellant
at the hands of Carmen. Appellant’s attorney summed up his argument, saying,
“[W]hat [appellant] did is the only thing he knew to get away, to save himself, to try
to save himself. It was the wrong thing to do, but he felt driven to it.”
           In rebuttal to the argument, the State asserted, 
. . . [T]here is no evidence to suggest that [appellant] did not do
it. In fact, in his own words, he told you, “I shot my dad.” That’s the
answer. “I shot my dad.”
 
There’s no self defense, there’s no justification. There is nothing,
nothing in this charge that says you can be driven to kill a person. 
Nothing.
          Under the fourth factor, statements during voir dire provide relevant
information. As noted above, the State’s attorney addressed self-defense and the use
of deadly force in self-defense during voir dire, indicating that the State knew the
defense would be at issue. The case was tried from the beginning with the
expectation that the jury would decide whether the shooting was legally justified. 
          An examination of the four factors shows that appellant’s entire defense rested
on his right to defend himself from Carmen, a person he admittedly shot and killed. 
See Guilbeau, 193 S.W.3d at 159–61 (considering error harmful based in part on fact
that entire defense was precluded). We hold that appellant was harmed by the
erroneous denial of the jury instruction on deadly force in defense of one’s person. 
See id. 

Conclusion
          We hold that appellant’s request was sufficient to alert the trial court that he
was requesting the justification defense of deadly force in defense of one’s person,
that evidence raised the defense, and that the error harmfully deprived appellant of
the opportunity to have the jury consider the defense. We therefore reverse and
remand for a new trial.
 

                                                                        Elsa Alcala
                                                                        Justice

Panel consists of Justices Taft, Keyes, and Alcala.

Publish. See Tex. R. App. P. 47.2(b).

Justice Taft, dissenting.