In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00050-CR

                                                ______________________________

 

 

                                   FELIPE RUBIO GASPAR,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 336th
Judicial District Court

                                                             Fannin County, Texas

                                                            Trial
Court No. 22386

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            Noemi
Jiminez,[1]
her four children, and her current boyfriend, Pedro Guzman, were all sleeping
in Jiminez’s darkened bedroom.  Awakened
by Guzman’s scream, Jiminez saw her former boyfriend, Felipe Rubio Gaspar,[2]
on top of Guzman and thought Gaspar was hitting Guzman with his fists.  She pulled Gaspar off of Guzman, but Gaspar “got
up and kept just going back after [Guzman].” 
As the struggle between Gaspar and Guzman continued, it moved through
various areas of the house, including the living room, where the lights had
been turned on.  When the two men
returned to the living room, Jiminez noticed that Gaspar was holding a
screwdriver and that Guzman was “drenched in blood” and holding a two-foot
statue as a weapon.  The fight ended when
Gaspar left the premises.  

            Gaspar
was indicted on charges of aggravated assault with a deadly weapon.  After a jury trial, Gaspar was found guilty
and sentenced to twenty years’ imprisonment.[3]  On appeal, Gaspar argues that there is
legally and factually insufficient evidence to support the conviction and that
the trial court erred in failing to allow a jury instruction on self-defense.[4]   We
affirm the conviction 




 

because:  (1) the evidence is legally sufficient to
support the verdict; and (2) there is no evidence that Gaspar was acting
in self-defense.

            Under
the authority of a very recent opinion where a plurality of the Texas Court of
Criminal Appeals abolished the separate factual-sufficiency review, we do not
address Gaspar’s challenge to the factual sufficiency of the evidence.[5]  See
Brooks v. State, No. PD-0210-09, 2010 WL 3894613, at **1, 14 (Tex. Crim.
App. Oct. 6, 2010).

(1)        The
Evidence Is Legally Sufficient to Support the Verdict

 

            Gaspar
and Jiminez had had an on-again, off-again relationship for several years.  After the relationship finally ended, Gaspar
began living in the house of Jesus Perez, within a mile of Jiminez, and Jiminez
began a new romantic relationship with Guzman. 
Guzman, Israel Jiminez (Jiminez’s father), and Nelson Rodriguez (her eleven-year-old
son), all testified that, earlier on the day of the alleged assault, Gaspar
came to the Jiminez property[6]
and confronted Guzman, warning him to leave Jiminez alone and that he would
regret “messing with” Jiminez.[7]  

            After
Perez and Gaspar got off work that day, the two traveled to a restaurant in
nearby McKinney, Texas, and “had a few drinks.” 
On returning to Perez’s home, Gaspar “got on the phone and started
arguing” with Jiminez.  Perez believed
Gaspar was arguing about “his kids, and . . . somebody being there with her.”  Gaspar indicated he was leaving because he
had to “go do something over there.” 
Gaspar invited Perez to go with him, but Perez declined saying, “I don’t
want no problems.”  Perez testified that
Gaspar was drunk and angry that “the other guy was down there.”

            Later,
when Gaspar returned to Perez’s home, he told Perez that Gaspar had “wrecked
the car” and asked Perez to help him hide it. 
Perez noticed that both the car and Gaspar were covered in blood, that
one of the car’s tires was “completely torn up,” and that “the fender was way
beyond repair, couldn’t be fixed.”

            Responding
to a 9-1-1 call, Officer Ron Alexander arrived at the Jiminez residence and saw
blood droplets on the wheelchair ramp outside the home, “quite a bit of blood
right there in the front of the door,” and “blood smeared all over the front
door, all over the screen door, a pretty good amount of blood.”  He testified that Guzman was lying on the
floor, bleeding profusely and that he appeared to have been stabbed several
times.  Guzman had thirteen puncture
wounds to his body, head, and face.

            Shortly
thereafter, the police arrived at Perez’s residence.  Alexander noticed “a little splatter of blood”
on the glass of Perez’s front door. 
Inside Perez’s home, Alexander found Gaspar asleep, saw a screwdriver
that matched Jiminez’s description on the floor beneath Gaspar’s outstretched
hand, and found a shirt and boots with blood on them.  Gaspar was arrested and charged.

            In reviewing the evidence for sufficiency,
we consider the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318–19 (1979).  Based on the Brooks plurality’s description of the new application of legal
sufficiency review under Jackson as “rigorous”
and its statement that the use by reviewing courts of the factual sufficiency
standard in tandem with the legal sufficiency standard may have “skewed” the
proper application of the Jackson
standard, it appears that the high court is attempting to refocus the
application of the legal sufficiency standard from the quantity to the quality
of the evidence presented.  See Brooks,
2010 WL 3894613, at **16–17 (Cochran, J., concurring).

            In conducting a legal sufficiency review, we
consider the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Laster
v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).  We must give deference to “the responsibility
of the trier of fact to fairly resolve conflicts in testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate facts.”  Hooper v. State, 214 S.W.3d 9, 13
(Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318–19).  We are not required to determine whether we
believe that the evidence at trial established guilt beyond a reasonable doubt;
rather, when faced with conflicting evidence, we must presume that the trier of
fact resolved any such conflict in favor of the prosecution, and we must defer
to that resolution.  Turro v.
State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  Sufficiency of the evidence is measured by the
elements of the offense as defined by a hypothetically correct jury
charge.  Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997).

            Gaspar
was charged with aggravated assault with a deadly weapon.  The indictment alleges that Gaspar did

then and there intentionally, knowingly, and
recklessly cause bodily injury to Pedro Noris Guzman by stabbing him with a
screwdriver and [Gaspar] did then and there use or exhibit a deadly weapon,
to-wit:  a screwdriver during the
commission of said assault.

 

On appeal, Gaspar argues that the
evidence supporting his conviction is insufficient because the State failed to
prove beyond a reasonable doubt that Gaspar, rather than Guzman, was the
aggressor.  We disagree.

            A
person commits aggravated assault with a deadly weapon if he or she intentionally,
knowingly, or recklessly causes serious bodily injury to another while using an
object with the intent, or in such a manner that the object is capable of
causing death or serious bodily injury.  Tex. Penal Code Ann. §§ 1.07(a)(17)(B),
22.02 (Vernon Supp. 2010).

            When
Jiminez saw Gaspar “on top of” Guzman in the darkened room, the open blinds and
door let in enough light that she could tell that Gaspar was the person
attacking Guzman.  Jiminez indicated that
Gaspar was the aggressor because she repeatedly tried to pull Gaspar off of
Guzman, but Gaspar “got up and kept just going back after [Guzman].”  However, Jiminez admitted that she never saw
Gaspar stab Guzman, that she did not see Gaspar holding a screwdriver until both
men were in the living room, and that she “didn’t actually know what was going
on till later.” 

            Rodriguez
saw Gaspar stabbing Guzman and indicated that Gaspar was the aggressor and that
he “wouldn’t stop.”  Even after Guzman
fell to the floor bleeding, Gaspar “tried to come back and keep [sic] on
stabbing him.” 

            Alexander
testified that there was a lot of blood all over the house, particularly near
the front door and that, when he arrived, Guzman was lying on the floor,
bleeding profusely, appearing to have been stabbed several times.  

            Guzman
had thirteen puncture wounds to his body, head, and face, but Guzman did not
remember Gaspar stabbing him with a screwdriver.  A screwdriver, matching the one Jiminez saw
Gaspar holding, was found at the Perez residence, just beneath Gaspar’s hand as
he lay asleep.  Remarkably enough, the
screwdriver had Gaspar’s DNA on it, but not Guzman’s.  Gaspar’s boots and shirt both had Guzman’s
blood on them. 

            Gaspar
had a single wound in his leg, but no evidence indicates Guzman caused the
injury or was ever in a position to cause the injury.  Even when Guzman was holding the statue,
there is no evidence he used it against Gaspar. 
Rodriguez testified that Guzman was about to throw the statue, but when
both he and Gaspar paused, Guzman put the statue down “and fell to the floor
bleeding.” 

            The
jury is the exclusive judge of the credibility of witnesses and of the weight
to be given their testimony, and reconciliation of conflicts in the evidence is
within the exclusive province of the jury.  Wyatt v.
State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000); Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994).  The jury may choose to believe some testimony
and disbelieve other testimony.  Wyatt, 23 S.W.3d at 30.  Here, taking all the evidence into
consideration and reviewing it in the light most favorable to the verdict,
there is ample testimony and forensic evidence to support the jury’s finding
that Gaspar attacked Guzman and stabbed him with a screwdriver.  The evidence is legally sufficient to support
the verdict.

(2)        There
Is No Evidence that Gaspar Was Acting in Self-Defense

 

            Gaspar
also contends that the trial court erred in denying his requested self-defense
instruction.  The State argues that
Gaspar failed to preserve this issue for appeal because he failed to either
submit his requested instruction in writing or dictate it into the record. 

            In
order to preserve error relating to the jury charge, there must either be an
objection or a requested charge.  Sanders v. State, 69 S.W.3d 690, 692 (Tex.
App.—Texarkana 2002, pet. dism’d, untimely filed); see Tex. Code Crim. Proc.
Ann. art. 36.14 (Vernon 2007), art. 36.15 (Vernon 2006).  This Court has held that, to preserve error, “a
request need only be sufficient to call the trial court’s attention to the
omission in the court’s charge.”  Martin v. State, 67 S.W.3d 340, 345
(Tex. App.—Texarkana 2001, pet. ref’d).[8]  In Arnwine,
this Court held that, despite Arnwine’s failure to present his proposed charge
in writing or dictate it into the record, the defendant’s objection to the
failure of the charge “to instruct the jury on the defense of necessity” was
sufficient to preserve the issue for appeal because the record indicated “the
trial judge understood Arnwine’s objection to the lack of a charge on necessity
and was aware of his request to include that charge.”  Arnwine
v. State, 20 S.W.3d 155, 157–58 (Tex. App.—Texarkana 2000, no pet.).

            Similar
to Arnwine, the record in this case
clearly indicates the trial court understood, or should have understood, the
request of a self-defense instruction. 
The following exchange occurred between the trial court, the State, and
Gaspar’s counsel:

            STATE:           In that case, Your Honor, the State
would re-urge the objection, the self-defense claim that I made earlier.  I just don’t think there’s a scintilla of
evidence to suggest self-defense.  There’s
-- there’s argument by counsel and insinuation by counsel, but as the Court knows,
that’s not evidence.         

 

            THE
COURT:             Okay,
[Defense Counsel]?

 

            [Defense Counsel]:     Your Honor, I think the fact that [Gaspar]
was stabbed in the leg provides more than ample evidence to indicate that the
jury could conclude that he was stabbed in the leg, number one. And, number
two, that under those circumstances that he has a legitimate self interest in
defending himself. . . .  Having said
that, there’s also evidence to indicate that the screwdriver that was submitted
into evidence was not, in fact, the weapon that was allegedly used in the
original premises since there was no DNA evidence nor blood, conclusively,
found on the screwdriver.  That takes us
back to the original scene where the altercation occurred.  If no weapon was found and he enters in there
and [Gaspar] was stabbed in the leg, then that gives rise to the possibility
that he -- that the other party received the stab wounds in response.

 

Gaspar
has properly preserved this issue for appeal.

 

            A
trial court’s decision to deny a defensive issue in a jury charge is reviewed
for an abuse of discretion.  Westbrook v. State, 29 S.W.3d 103, 122
(Tex. Crim. App. 2000).  A trial court
abuses its discretion when it acts arbitrarily, unreasonably, or without
reference to any guiding rules and principles. 
Montgomery v. State, 810
S.W.2d 372, 380 (Tex. Crim. App. 1990); Reynolds
v. State, 227 S.W.3d 355, 371 (Tex. App.—Texarkana 2007, no pet.).

            A
defendant is entitled to an instruction on self-defense if the issue is raised
by the evidence, whether that evidence is strong or weak, unimpeached or
contradicted, and regardless of what the trial court may think about the
credibility of the defense.  Ferrel v. State, 55 S.W.3d 586, 591 (Tex.
Crim. App. 2001); Guilbeau v. State,
193 S.W.3d 156, 159 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  Before a defendant is entitled to a self-defense
instruction, however, there must be some evidence, when viewed in the light
most favorable to the defendant, that will support the claim.  Ferrel, 55 S.W.3d at 591; Hill v. State, 99 S.W.3d 248, 251 (Tex.
App.—Fort Worth 2003, pet. ref’d).  Thus,
entitlement to a self-defense instruction is predicated on the provision of
some evidence that the defendant was authorized to use force against another.  “[A] defense is supported (or raised) by the
evidence if there is some evidence, from any source, on each element of the
defense that, if believed by the jury, would support a rational inference that
that element is true.”  Shaw v. State, 243 S.W.3d 647, 657 (Tex.
Crim. App. 2007).  A defendant need not
testify in order to raise a defense.  Boget v. State, 40 S.W.3d 624, 626 (Tex.
App.—San Antonio 2001), aff’d, 74
S.W.3d 23, 26 (Tex. Crim. App. 2002).  Defensive
issues may be raised by the testimony of any witness, even those called by the
State.  Jackson v. State, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th
Dist.] 2003, pet. ref’d).  When reviewing
a trial court’s decision to deny a requested defensive instruction, “we view
the evidence in the light most favorable to the 




 

defendant’s requested submission.”
 Bufkin
v. State, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).  However, “if the evidence, viewed in the light
most favorable to the defendant, does not establish self-defense, the defendant
is not entitled to an instruction on the issue.”  Ferrel,
55 S.W.3d at 591.

            Gaspar
argues that the trial court should have included an instruction on self-defense
in the charge, in light of the evidence raised on that issue.  He directs our attention to the following
evidence:  (1) Gaspar was cut or stabbed
in the leg from behind; and (2) only Gaspar’s blood and DNA were found on the
screwdriver.  When the foregoing evidence
is analyzed in light of the requirement that some evidence must be raised on
each element of the defense, we conclude the trial court was correct in its
decision that an instruction on self-defense was not warranted.  Section 9.31 of the Texas Penal Code
provides, in part, that “a person is justified in using force against another
when and to the degree the actor reasonably believes the force is immediately
necessary to protect the actor against the other’s use or attempted use of
unlawful force.”  Tex. Penal Code Ann.
§ 9.31(a) (Vernon Supp. 2010).  Moreover,
Section 9.32 of the Texas Penal Code provides:

(a)        A
person is justified in using deadly force against another:

            (1)        if the actor would be justified in using
force against the other under Section 9.31; and

            (2)        when and to the degree the actor
reasonably believes the deadly force is immediately necessary:




 

 

                        (A)
to protect the actor against the other’s use or attempted use of unlawful
deadly force; or

                        (B)
to prevent the other’s imminent commission of aggravated kidnapping, murder,
sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

 

Tex. Penal Code Ann. § 9.32(a) (Vernon Supp. 2010).

 

            The
record contains no evidence suggesting that Gaspar reasonably believed the use
of force was immediately necessary to protect himself from the use or attempted
use of unlawful force, or to prevent the commission of any of the offenses
listed in Sections 9.31 or 9.32 of the Texas Penal Code.  Instead, the evidence here suggests that
Gaspar entered the Jiminez home and attacked a sleeping man without
provocation.  It could be inferred from
the evidence that Guzman struck, or attempted to strike, Gaspar, possibly with
the small statue or the screwdriver. 
However, it is undisputed that Gaspar was the aggressor from the moment
he entered the Jiminez home until the time he left, and the evidence also
reveals that Guzman seized the statue in order to defend himself from Gaspar’s
relentless attacks.  Under these
circumstances, Gaspar was not entitled to an instruction on self-defense.  This point of error is overruled.            

            We affirm the judgment of the trial
court.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          October 6, 2010

Date Decided:             November 5, 2010

 

Publish 











[1]In
the record, Jiminez is also spelled, “Jimenez.”  In this opinion, we use the “Jiminez”
spelling. 

 





[2]There
is testimony that Gaspar and Jiminez once lived together as husband and wife.

 





[3]The
sentence was to run concurrently with his sentence in cause number
06-10-00051-CR.  Gaspar was also assessed
a $10,000.00 fine and court costs of $436.00.

 





[4]Gaspar
received permission to submit one brief for the two appeals (cause numbers
06-10-00050-CR and 06-10-00051-CR) he has pending before this Court. 

 





[5]With
Judge Cochran joining the lead opinion and authoring a concurring opinion and
Judge Womack concurring with the lead opinion and joining the concurrence, in Brooks v. State, No. PD-0210-09, 2010 WL
3894613, at **1, 14 (Tex. Crim. App. Oct. 6, 2010) (4-1-4 decision), a
plurality of the Texas Court of Criminal Appeals abolished the
factual-sufficiency review established by Clewis
v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its progeny.  The plurality and Judge Womack agreed that
the Jackson v. Virginia
legal-sufficiency standard is the only standard that a reviewing court should
apply in determining whether the evidence is sufficient to support each element
of a criminal offense that the State is required to prove beyond a reasonable
doubt.  Brooks, 2010 WL 3894613, at *1, 14. 
Since the Texas Court of Criminal Appeals has abolished
factual-sufficiency review, we need not address the challenge to the factual
sufficiency of the evidence.  

 





[6]The
property is owned by Jiminez’s father, Israel Jiminez.

 





[7]Whether
Perez was with Gaspar during the confrontation is disputed.  Israel testified that Perez was there, while
Perez denies any involvement.





[8]Martin is consistent with other Texas
courts.  See Atkinson v. State, 923 S.W.2d 21, 24 n.2 (Tex. Crim. App. 1996)
(“so long as it calls attention to an error or omission”); Brazelton v. State, 947 S.W.2d 644, 647 (Tex. App.—Fort Worth 1997,
no pet.); Reyes v. State, 910 S.W.2d
585, 592 (Tex. App.—Amarillo 1995, pet. ref’d); Bell v. State, 881 S.W.2d 794, 803–04 (Tex. App.—Houston [14th
Dist.] 1994, pet. ref’d) (the request “need only put the trial court on notice
of an omission or error”).