**James Brian HILL, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–01–282–CR.**

Court of Appeals of Texas,
Fort Worth.

Jan. 16, 2003.

Rehearing Overruled Feb. 20, 2003.

Bill Lane, Scott Brown, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., Charles M. Mallin, David M. Curl, Christy Jack, Lloyd Whelchel, Assistant Criminal District Attorneys, Fort Worth, for state.

PANEL A: CAYCE, C.J.; DAY and LIVINGSTON, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

Appellant James Brian Hill (appellant) appeals his conviction by a jury for murder. In his sole point, appellant contends that the evidence is legally insufficient, and no rational jury would have found against him regarding self-defense and defense of a third person. We affirm.

### I. Facts

Appellant and his mother had suffered emotional and physical abuse from his father his entire life. On one occasion, appellant witnessed his father push his moth-

er up against a wall, choke her until she could not breathe, and hold a knife to her throat. Guns and knives were a constant part of his life, and his father often brandished them during arguments. As a young boy, his father would call him over, as if to give him something, but would then thump him on the head and knock him down. Appellant grew up with and his mother endured this constant abuse. This abuse ended on August 9, 1999 when appellant shot and killed his father.

Early that morning, appellant went for a run. He witnessed a theft in progress and called the police. An officer went to appellant's home, which sent his father into a rage. He could hear his father yelling at his mother, and when she finally came downstairs, she was shaking and frightened.

Appellant went to the bedroom and attempted to calm his father down. His father was angry about the police showing up at his house because he had been arrested only a few months earlier for spousal abuse. His father then said he would be better off if appellant and his mother were dead, which was not an unusual statement. Appellant's father then grabbed a .38 revolver that was on a nearby desk, but appellant took it from him. Appellant was still afraid that his father was armed because he almost always kept a small gun in his pocket.

Appellant's father approached him aggressively and tried to take the gun away, and appellant stepped back into the corner. When his father would not get back, appellant shot him. He saw his father's arm jerking, and he thought he had missed. He then fired a second shot, which killed him. The jury found appellant guilty of murder and sentenced him to five years' imprisonment and a $10,000 fine.

## II. Discussion

### A. Appellant's Complaint is Not Forfeited

■ The State alleges that appellant's complaint is forfeited because he failed to present a sufficient record, specifically, the record from the punishment phase of trial. *See* Tex.R.App. P. 34.6(c)(5) (requiring the record of guilt or innocence and punishment when an appellant challenges the sufficiency of evidence to support a finding of guilt). Under rule 34.6(d), if anything relevant is omitted from the reporter's record, the appellate court may by letter direct the official court reporter to prepare, certify, and file in the appellate court a supplemental reporter's record containing the omitted items. Tex.R.App. P. 34.6(d). Any supplemental reporter's record is then part of the appellate record. *Id.*

Per this court's own motion, we ordered the court reporter of the trial court to deliver a supplemental reporter's record containing the punishment hearing. The supplemental record was filed on December 6, 2002; therefore, appellant has not waived his complaint.

### B. Jury Charge on Defensive Issues was Proper

Appellant contends the evidence is legally insufficient to support his conviction. The State first responds that appellant's theory of self-defense and defense of a third person should not have been submitted to the jury.

■ A defendant has the burden of producing sufficient evidence at trial to raise the issue of self-defense. *Withers v. State*, 994 S.W.2d 742, 744 (Tex.App.-Corpus Christi 1999, pet. ref'd). Because self-defense is a justification defense, the defendant is essentially required to admit committing the conduct giving rise to the indictment in order to be entitled to the

charge. *Id.* at 745; *see also Anderson v. State,* 11 S.W.3d 369, 372 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd) (stating that a defendant must admit the offense to get a self-defense instruction). If the evidence raises the issue, the defendant is entitled to have the issue submitted to the jury. *Withers,* 994 S.W.2d at 744. The defendant has this right whether the evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense. *Id.* at 745.

A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31 (Vernon Supp.2003). A person is justified in using deadly force against another (1) if he would be justified in using force against the other under section 9.31, (2) if a reasonable person in the actor's situation would not have retreated, and (3) when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32. A "reasonable belief" means a belief that would be held by an ordinary prudent person in the same circumstances as the actor. *Id.* § 1.07(a)(42) (Vernon 1994).

A person is justified in using force or deadly force against another to protect a third person if (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under section 9.31 or section 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect, and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person. *Id.* § 9.33. In other words, if the third person would have been justified in killing under section 9.32, then the defendant would also be justified in killing the victim.

■ Here, the appellant's evidence raised the issue of self-defense; therefore, the trial court properly submitted the issue to the jury. First, appellant admitted to using deadly force. *See Anderson,* 11 S.W.3d at 372 (stating that defendant must admit offense to get a self-defense instruction). Appellant testified that on the day of the murder, his father said it was time to do something he should have done a long time ago. This threat occurred after an argument with appellant's mother. Appellant knew he was threatening to kill him and his mother, and it was not the first time his father had made such threats.

Appellant further testified that when he went to confront his father, he saw a gun sitting out on the desk. His father grabbed the gun, but appellant was able to take it away from him because his father did not have a good grasp on it. Even though appellant retrieved the gun, he testified that he was still scared that his father was armed. He knew that his father kept several weapons throughout the house and also carried a gun in his pocket.

Appellant testified that his father approached him aggressively and said, "I didn't have the guts, and that I was a coward, and that he was going to teach me about taking—taking something out of his hands again," which appellant knew was a threat to kill him. Fearing for his and his mother's life, appellant fired the first shot, but he was unsure if he hit his father because he was blinded by the muzzle flash. He saw a jerky arm movement and thought his father was trying to get up. He then fired a second shot as he ran out

the door. Appellant further testified to the following:

Q. Is there any doubt in your mind that day, August the 9th of 1999, Brian, that when your father lunged at you back there in the bedroom, that you had to protect yourself?

A. No, there's no doubt.

Q. Any doubt in your mind that he was capable of inflicting deadly force on you?

A. I knew he was.

Q. Was there any doubt in your mind that you had to resort to deadly force to protect yourself?

A. No.

Q. Had to protect your mother?

A. None

Q. Do you feel like that was your only resort?

A. Yeah.

Q. Had you ever pointed a gun at your father before?

A. No.

■ Despite the State's claim that the prosecution and defense experts foreclosed any plausible claim of self-defense, appellant produced sufficient evidence to raise the issue. He had the right to have the issue submitted to the jury even if the evidence was weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not have thought about the credibility of the defense. *See Withers,* 994 S.W.2d at 745; *see also Villarreal v. State,* 61 S.W.3d 673, 681 (Tex. App.-Corpus Christi 2001, pet. ref'd) (holding that a self-defense instruction was inappropriate when the record reflected that deadly force was not immediately necessary because sufficient time had elapsed to allow Villarreal to leave the crime scene and then return to use deadly force on an unconscious victim). Therefore, the trial court properly instructed the jury on ap-

pellant's issues of self-defense and defense of a third person.

## C. Legal Sufficiency of the Conviction

■ Appellant contends that the evidence is legally insufficient, and no rational jury would have found against him on self-defense and defense of a third person. The State argues that the evidence is legally sufficient to support his murder conviction.

■ In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict. *Cardenas v. State,* 30 S.W.3d 384, 389–90 (Tex.Crim. App.2000); *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ The issue of self-defense is a fact issue to be determined by the jury, and a jury is free to accept or reject the defensive issue, even if the evidence is uncontroverted. *Wilkerson v. State,* 881 S.W.2d 321, 324 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 1060, 115 S.Ct. 671, 130 L.Ed.2d 604 (1994); *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992). A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theo-

ry. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991).

Here, the jury could have accepted the self-defense claim after appellant and his mother testified to all the years of verbal and physical abuse they endured. The appellant also testified that his father threatened to kill him, lunged for a gun first, and routinely kept another gun in his pants. However, the jury also heard evidence contradicting the self-defense claim. Appellant testified that he had other people threaten him in the past and he called the police on them; however, he was ashamed and unwilling to call the police about his own father's actions. He knew two attorneys who could have helped him and his mother when he thought their lives were in danger, but he did not pursue their help. He admitted that when the murder occurred, it had been years since his father had used a weapon or physically assaulted them. There was still verbal abuse, but they "often all got mixed up" in it.

The jury also heard testimony that after the appellant shot his father between the eyes and he had fallen to the ground, appellant fired a second shot to his father's head at close range. The expert testified that the father was not in a threatening or aggressive position after he fell to the ground. Appellant testified that he attempted to give his father CPR; however, no blood was found on appellant. Furthermore, an expert testified that the photographs of the body did not indicate that CPR had been performed. Appellant's mother testified that the gunshots were approximately three seconds apart, and she remembered appellant telling his father to stop abusing him. She also testified that she may have told the police that appellant told her right after the shooting, "I'm tired of dad abusing me." He said nothing about self-defense. The jury also

heard conflicting testimony about the time of the shooting and how quickly appellant called 911.

Based on these facts, a rational jury could have rejected the defensive evidence. *See Wilkerson,* 881 S.W.2d at 324 (stating that a jury is free to accept or reject any or all of the evidence of either party and any or all of the testimony of any witness). We hold the evidence is legally sufficient to support appellant's conviction. Thus, appellant's sole point is overruled.

### III. Conclusion

Having overruled appellant's sole point, we affirm his murder conviction.