NUMBER 13-09-00622-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI -
EDINBURG 


                                                                                                                     


 

EFRAIN PUENTE,                                                              Appellant,

 

v.

 

THE STATE OF TEXAS,                      
                            Appellee.

                                                                                                                     
  

 

On appeal from the 357th
District Court 

of Cameron County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Garza  

Memorandum Opinion by
Justice Rodriguez

 

Appellant Efrain Puente was indicted for
the offense of murder.  See Tex.
Penal Code Ann. § 19.02(b)(1) (West 2003).  He entered a plea of
"not guilty."  After the jury rejected appellant's justification theory
of self-defense, it found him guilty of murdering Francisco Losoya.  During the
punishment phase, the jury found that appellant did not cause Losoya's death
under the immediate influence of sudden passion and assessed punishment at life
in the Institutional Division of the Texas Department of Criminal Justice and a
fine of $10,000.  See id. § 19.02(d).  By four issues, which we renumber
as two, appellant complains that the evidence is insufficient to support his
conviction.  We affirm.

I.  Background[1]

The evidence established that appellant
and his wife, Teresa Puente, lived together in a mobile home in El Ranchito,
Texas, with their two children and Teresa's four older children.  Approximately
three weeks before the incident, appellant and Teresa argued.  Teresa told
appellant that she wanted him to leave.  Appellant went to Houston, Texas, to
stay with his mother and find work.  On May 13, 2008, at approximately 4:00
p.m., appellant called Teresa and asked to see his children.  Teresa agreed to
the visit but told appellant that she hated him.  Appellant arrived at the
house later that day.

A.  Teresa Puente's Testimony

According to Teresa, Francisco Losoya
had been staying at the house for about one week when appellant called her. 
Losoya was wearing appellant's clothes because he arrived at Teresa's house
without a change of clothing.  Teresa also testified that Losoya knew appellant
was coming to see his children, and Losoya threatened to kill appellant.

At trial, Teresa testified that, on May
13, she was outside with three of her children.  Teresa's and appellant’s two
children were inside with Teresa's oldest daughter.  According to Teresa,
Losoya had been drinking and was also outside.  Teresa testified that she did
not see Losoya holding a knife that afternoon, except for when he was peeling
lemons.  Losoya placed some of his knives on the top stair by the back door of
the house.  Teresa heard a scuffle that lasted "not even minutes,"
saw Losoya and appellant struggling and fighting, grabbed her daughter, and ran
to get help.  Teresa also testified that she did not see appellant holding a
knife.  According to Teresa, appellant ran when he heard her scream
"Police."  She testified that Losoya chased appellant until appellant
got into a car where another man was waiting, and appellant and the other man left.

On cross-examination, Teresa identified,
read into the record, and testified, without objection, about certain portions
of a written statement she had given at or near the time of the incident.[2] 
Teresa agreed that her written statement contained the following information
that differed from her trial testimony:  (1) appellant stabbed Losoya while
Losoya was sitting on the steps; (2) appellant was the first to pull out a
knife, and he began stabbing Losoya; and (3) appellant continued to stab
Losoya.  Teresa also agreed that her previous statement reflected that
appellant was responsible for the stabbing.  She testified, however, that although
she told the officers that Losoya was playing with knives, that was not
included in her written statement.  She also agreed that nowhere in her written
statement did she say that appellant stayed to help Losoya, that Losoya started
the fight, or that Losoya had any weapon during the stabbing.

Recanting what she said in her prior statement,
Teresa testified that she gave her statement to investigators out of fear of
America Garcia, Losoya's mother, who had allegedly threatened Theresa.  She
also testified that if she blamed appellant, "[Garcia] would never hurt
[her] because there was somebody that was guilty."  Teresa agreed that,
after fighting with Garcia, she changed her story.  When asked, "So were
you lying then or are you lying now, ma'am?," she answered, "No.  I
was lying back then."

On redirect, Teresa testified that she
had tried to tell an officer that the handwritten statement was not true, but
he informed her that if she changed anything, she would be locked up and would
lose her children.  When asked which one she feared more, the officer or
Garcia, Teresa testified, "[Garcia], but I don't care because I want to
tell the truth because I have been like I'm in a jail."

B.  Appellant's Testimony

Appellant testified at trial that after
talking with Teresa by phone about seeing his children, a friend drove him to
the house.  When appellant arrived, he found a man wearing camouflage pants
inside his home.  Appellant thought this man had a knife and was breaking into
his house.  Appellant explained that because of what he thought this man might
have done to his family and because the man appeared to be running away,
appellant went toward him.  According to appellant, the man took out a knife
and started to attack him.  Appellant testified that what began in the trailer
progressed to the backyard when both men fell out the back door of the mobile
home.  According to appellant, he fell on top of the man.  They wrestled, got
up, fought, and fell back down for approximately three or four minutes.

Appellant testified that he took a knife
away from the man, but then the man took the knife back.  According to
appellant, the man got up and started to run toward the side of the mobile
home.  Appellant testified that he thought the man was going to get something
else to "finish trying killing" him, so he got in the car and left. 
Appellant explained that he had blood on his arms—his blood where he had been
cut and some other blood.  According to appellant, he told his friend that
"this man attacked me.  I had to defend myself."  Appellant testified
that he also told his friend that "this man tried to stab me and had cut
me in my arm."  Appellant claimed that he had no weapons on him that day
and that he did not know Losoya died until he was arrested.

C.  Rogelio Becerra's Testimony

Rogelio Becerra, Teresa's neighbor,
testified that he was leaving for work on May 13, 2008, when he heard a scuffle
in his neighbor's yard and heard his neighbor screaming, "they're going to
kill him."  After Becerra saw one male run to a car and the car "haul
a**," he called for help.

D.  America Garcia's Testimony

Garcia testified that she received a
call from Teresa and left immediately to see what happened.  She explained that
Teresa and Losoya were friends and that "[h]e was paying rent to Teresa so
he could go work [with transportation arranged by Teresa]."  Garcia agreed
that she and another son assaulted Teresa at Losoya's funeral.  But, according
to Garcia, she never threatened Teresa.  Garcia testified that she saw Teresa
approximately three weeks before trial, and Teresa had said that "she was
afraid to come [to trial] because of her family."

D.  Officer Marco Antonio Gonzalez's Testimony

Officer Gonzalez, the intake officer at
the Cameron County Jail, testified that when appellant arrived at the jail, he
took him to the nurse to be checked for injuries.  At that time, appellant
asked him something in Spanish, which was interpreted as slang to mean "to
knife, to cut with a knife."  Officer Gonzalez testified that he was
familiar with some street language and that, to him, "it meant that [appellant]
had stabbed a young kid."  Appellant was assessed by the nurse, who noted
cuts on the inside of appellant's left arm.  Officer Gonzalez testified that,
while being treated, appellant spoke in Spanish and said what was interpreted
as the following:  "When we were knifing the young guy, I jumped over the
fence and I got cut."  When asked if appellant made any other admissions
that night, Officer Gonzalez replied, "No, ma'am.  He was just admitting
he had stabbed somebody."

E.  Norma Jean Farley, M.D.'s Testimony

Dr. Farley, a forensic pathologist,
testified that she conducted the autopsy on Losoya.  She identified nine stab
wounds–-wounds to Losoya's jaw, left backside, left frontal scalp, anterior
left chest, mid chest, left abdomen, left arm, and hip.  Dr. Farley described two
wounds on Losoya's left forearm as defensive-type stab wounds.  She also
identified contusions on Losoya's shoulder.  Dr. Farley testified that the
fatal wound to the anterior left chest, which in her opinion was made by a
knife, was four-and-a-half inches deep following a lethal wound track, going
through "the left lung and into the sac that sits around the heart and
into the pulmonary artery . . . ."

II. 
Sufficiency of the Evidence

            By two issues, appellant claims that the evidence
is insufficient to support his murder conviction.  By his first issue, appellant
specifically challenges the sufficiency of the evidence to establish the intent
element of the offense, see Tex.
Penal Code Ann. § 19.02(b)(1), and, by his second issue, the jury's rejection
of his self-defense claim.  See id. § 9.32 (a)(3)(A) (West Supp. 2010).

A. 
Standard of Review

Although appellant challenges both the
legal and factual sufficiency of the evidence, in light of the Texas Court of
Criminal Appeals's 2010 opinion in Brooks v. State, we will conduct only
a legal sufficiency review.  See 323 S.W.3d 893, 912 (Tex. Crim. App.
2010) (plurality op.).  Brooks held that there is "no meaningful
distinction between the . . . legal-sufficiency standard
and the . . . factual-sufficiency standard, and these two standards have become
indistinguishable."  Id. at 902.  A legal sufficiency standard is
"the only standard that a reviewing court should apply in determining
whether the evidence is sufficient to support each element in a criminal
offense that the State is required to prove beyond a reasonable doubt.  All
other cases to the contrary . . . are overruled."  Id. at 912.

When conducting a sufficiency review, a
court must ask whether "any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt"—not whether
"it believes that the evidence at the trial established guilt beyond a
reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 318-19
(1979).  A sufficiency analysis requires the court to view all of the evidence
in "a light most favorable to the verdict and to determine whether a
rational trier of fact could have found all of the essential elements of the
crime beyond a reasonable doubt."  Id.; see Laster v. State,
275 S.W.3d 512, 517 (Tex. Crim. App. 2009).  We look at "events occurring
before, during and after the commission of the offense and may rely on actions
of the defendant which show an understanding and common design to do the
prohibited act."  Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim.
App. 2004) (quoting Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim.
App. 1985)).  The trier of fact is the sole judge of the facts, the credibility
of the witnesses, and the weight given to testimony.  Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Beckham
v. State, 29 S.W.3d 148, 151 (Tex. App.—Houston [14th Dist.] 2000, pet.
ref'd).  We do not reevaluate the weight or credibility of the evidence, nor do
we substitute our own conclusions for the trier of fact.  King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc).  Instead, we resolve any
inconsistencies in the evidence in favor of the final judgment and consider
whether the jury reached a rational decision.  Curry v. State, 30 S.W.3d
394, 406 (Tex. Crim. App. 2000).

            Sufficiency is measured by the elements of
the offense as defined by a hypothetically correct jury charge.  Villarreal
v. State, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  As indicted in this case,
appellant is guilty of murder if he intentionally or knowingly caused the death
of an individual by stabbing him with a knife or other unknown object.  See Tex. Penal Code Ann. § 19.02(b)(1).

B. 
Applicable Law

1. 
Intent

 

Intent and knowledge
are fact questions for the jury, and are almost always proven through evidence
of the circumstances surrounding the crime.  Robles v. State, 664 S.W.2d
91, 94 (Tex. Crim. App. 1984) [(en banc)]; Mouton v. State, 923 S.W.2d
219, 223 (Tex. App.—Houston [14th Dist.] 1996, no pet.).  Intent may be
inferred from words and conduct of the accused.  See Hernandez v. State,
819 S.W.2d 806, 810 (Tex. Crim. App. 1991) [(en banc)].  Intent to kill may be
inferred from use of a deadly weapon, unless in the manner of its use it is
reasonably apparent that death or serious bodily injury could not result.  Flanagan
v. State, 675 S.W.2d 734, 744 (Tex. Crim. App. 1984) [(en banc) (op. on
reh'g)]; Bell v. State, 501 S.W.2d 137, 138-39 (Tex. Crim. App. 1973).

 

Childs v. State, 21 S.W.3d 631, 635 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref'd); see Guevara, 152 S.W.3d at
49-50.

2.  Self-Defense

One may use force against another when
and to the degree he reasonably believes the force is immediately necessary to
protect himself against the other's use or attempted use of unlawful force.  Tex. Penal Code Ann. § 9.31 (West Supp.
2010).  This includes using deadly force against the other if a reasonable
person in the actor's situation would not have retreated and when and to the
degree that "he reasonably believes" the deadly force is immediately
necessary to protect himself against the other's use or attempted use of
unlawful deadly force.  Id. § 9.32(a).

When a defendant asserts a claim of
self-defense, the State has the ultimate burden of persuasion.  Zuliani v.
State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2007); Miller v. State, 177 S.W.3d 177, 183 (Tex. App.—Houston
[1st Dist.] 2005, pet. ref'd).  The burden of persuasion does not require the
production of evidence; it requires only that the State prove its case beyond a
reasonable doubt.  Zuliani, 97 S.W.3d at 594.  "The issue of
self-defense is a fact issue to be determined by the jury, and a jury is free
to accept or reject the defensive issue, even if the evidence is uncontroverted." 
Hill v. State, 99 S.W.3d 248, 252 (Tex. App.—Fort Worth 2003, pet. ref'd)
(citing Wilkerson v. State, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994)). 
When a jury finds a defendant guilty, there is an implicit finding against the
defensive theory.  Zuliani, 97 S.W.3d at 594.   When reviewing the
sufficiency of the evidence concerning the jury's rejection of self-defense, "we
determine whether after viewing all the evidence in the light most favorable to
the prosecution, any rational trier of fact would have found the essential
elements of murder beyond a reasonable doubt and also would have found against
appellant on the self-defense issue beyond a reasonable doubt."  Saxton
v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (en banc); Lee v.
State, 259 S.W.3d 785, 791 (Tex. App.—Houston [1st Dist.] 2007, pet.
ref'd).

C. 
Discussion

1.  Intent

            By his first issue, appellant contends that
the evidence is insufficient to establish the element of intent beyond a
reasonable doubt and is, therefore, insufficient to support the jury's
verdict.  Appellant asserts that there is no evidence to establish that he
acted with the intent to murder Losoya, rather than to just defend himself.

Here, the evidence establishes that appellant
and Teresa had been separated for approximately a month.  Appellant went to see
his children.  Shortly before he arrived, appellant talked with Teresa and was
told that he could see his children but that Teresa hated him.  Appellant found
Losoya, a man appellant did not know, at the house where his wife and children
lived.  Losoya was wearing appellant's clothes.  This is evidence of
circumstances surrounding the crime which could have established appellant's intent
to murder Losoya.  See Guevara, 152 S.W.3d at 50 ("Motive is a
significant circumstance indicating guilt.").

Although it is undisputed that appellant
and Losoya fought, Teresa testified that she saw neither man with a knife while
they fought.  However, Teresa also testified at trial that her statement to the
police included the following:  that appellant was the first to pull out a
knife; that he began stabbing Losoya while Losoya sat on the steps; and that
appellant continued to stab at Losoya.  Appellant also testified that, at some
point during the fight, he had the knife; he took it away from the man.  And
Officer Gonzalez testified that appellant admitted he had stabbed somebody. 
Therefore, the jury could have determined that appellant used a deadly weapon. 
See Childs, 21 S.W.3d at 635.  Moreover, Losoya's nine stab wounds, one
of which was a four-and-a-half lethal knife wound, were inflicted in a manner
that could have and did result in death.  Appellant only received one cut on
his arm, and there is conflicting testimony as to how he received that cut—from
the fight or from jumping over the fence.  No one else was involved in the
fight.  The jury could have inferred intent to kill from this evidence.  See
id.  Moreover, appellant did not immediately call 911 or an ambulance after
allegedly stabbing Losoya in self-defense.  Instead, according to Teresa’s
neighbor, when Teresa yelled for someone to call the police, appellant fled the
scene in haste.  Intent can be inferred from such conduct.  See Hardesty v.
State, 656 S.W.2d 73, 77-78 (Tex. Crim. App. 1983) ("Flight is also a
circumstance indicating guilt.").

We are to view all of the evidence in
"a light most favorable to the verdict and to determine whether a rational
trier of fact could have found all of the essential elements of the crime
beyond a reasonable doubt."  Jackson, 443 U.S. at 318-19; see Laster,
275 S.W.3d at 517.  The jury weighed conflicts in testimony and resolved them
against appellant.  See Tex. Code
Crim. Proc. Ann. art. 38.04; Beckham, 29 S.W.3d at 151.  We will
neither reevaluate that determination nor substitute our own conclusions for those
of the jury.  See King, 29 S.W.3d at 562.  Instead, while the record
supports conflicting inferences, we must presume that the trier of fact
resolved any such conflicts in favor of the prosecution, and we must defer to
that resolution.  See Jackson, 443 U.S. at 326.  Doing so, we conclude
that, in this case, a rational trier of fact could have found, beyond a
reasonable doubt, that appellant intentionally caused the death of Losoya by
stabbing him with a knife.  See id. at 318-19.  We overrule appellant's
first issue.

2.  Self-Defense

            By his second issue, appellant claims that
the evidence is insufficient to support the jury's rejection of his
self-defense claim.  He specifically contends that "the evidence shows
that any acts [appellant] committed which were acts dangerous to . . .
Losoya's life, were acts made in self-defense.  [Appellant] testified he acted
in self-defense and did not know . . . Losoya had died."  Appellant
asserts that he "had no choice but to use the force to defend himself
which was, at the very least, equal to the force that was being inflicted upon
him by . . . Losoya," who was trying to stab him.  We disagree.

            As set out above, although Teresa testified
that Losoya had placed some knives on the outside stairs, the only evidence
that Losoya had a knife when he fought with appellant came from appellant's
testimony.  Losoya was stabbed nine times while appellant received only one cut,
which the jury could have determined occurred when he jumped over the fence. 
Even if appellant's testimony that Losoya had a knife was uncontroverted, the
jury was free to reject appellant's self-defense claim.  See Hill, 99
S.W.3d at 252.  The jury could have concluded that Losoya's actions were not so
threatening to appellant at that time that appellant reasonably believed that his actions were necessary to protect himself against
Losoya.  See Tex. Penal Code Ann.
§ 9.31.  In this case, a rational jury could also have chosen to
disbelieve appellant's testimony that it appeared to him that Losoya had a
knife when he first saw him in the trailer and when they fought; that he had to
defend himself against Losoya's attempted use of deadly force; and that a
reasonable person in that situation would not have retreated.  Id. §
9.32(a).

Although appellant may have perceived
things differently, the evidence is, at best, conflicting with regard to
whether Losoya engaged in any physical attack on appellant that would have
justified appellant's use of deadly force against him.  The jury could have
rejected the defensive evidence and concluded that appellant suffered nothing
life-threatening at the hands of Losoya at or near the time appellant
repeatedly stabbed and killed him.  See Hill, 99 S.W.3d at 253.

Viewing the evidence in the light most
favorable to the verdict, we conclude that a rational trier of fact could have
found beyond a reasonable doubt that appellant intentionally caused Losoya's
death, see Zuliani, 97 S.W.3d at 594; Saxton, 804 S.W.2d at 914,
and that a rational jury could have found against appellant on the self-defense
issue beyond a reasonable doubt.  See Saxton, 804 S.W.2d at 914. 
Accordingly, we conclude that the evidence is sufficient to support the jury's
finding of guilt and its rejection of appellant's claim of self-defense.  We
overrule appellant's second issue.

VI. 
Conclusion

            We
affirm the judgment of the trial court. 

 

                                                                                                             NELDA
V. RODRIGUEZ

                                                                                                             Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the 

9th day of June, 2011.

                                                                                                                                                            









[1] Because this is a memorandum opinion
and the parties are familiar with the facts, we will not recite them here
except as necessary to advise the parties of the Court's decision and the basic
reasons for it.  See Tex. R. App.
P. 47.4.





[2] It is unclear from the record whether
Teresa was testifying about a May 13 statement she gave while sitting in a
police car outside the house or from a statement given to an investigator at
the sheriff's office on May 16, 2008.  Nonetheless, Teresa did testify
regarding the statements she gave to police.