# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00737-CR

**Quinnton Phillip Gault, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT NO. 10-1518-K26, HONORABLE LLOYD DOUGLAS SHAVER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Quinnton Phillip Gault, appellant, was convicted of aggravated robbery. *See* Tex. Penal Code Ann. § 29.03(a)(3) (West 2011) (person commits offense if commits robbery and uses or exhibits deadly weapon). The jury assessed punishment at 20 years' imprisonment. In four issues, appellant complains that the trial court erred by admitting a portion of a police officer's dashboard video recording and by refusing his request for a jury instruction on self-defense. We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 19, 2010, an officer from the Taylor Police Department was dispatched to the home of James Baldwin, who had reported that he had just been robbed. At trial, Baldwin and appellant gave different versions of the events of that evening. According to Baldwin, at 12:30 that night he was sitting on his couch watching television and playing games on his computer. The door to his house was open about six inches and secured by a bungee cord attached to a folding chair

inside the doorway. Baldwin kept his door slightly open so that a family of cats he took care of could come inside to eat. Baldwin testified that he heard a noise at the door, the bungee cord was cut, and appellant entered his home. Baldwin stated that appellant carried a knife, which he pointed at Baldwin while demanding Baldwin's wallet and cell phone. Baldwin kicked the wallet toward appellant and motioned to where his cell phone was located. Appellant picked up the wallet, but while he was looking for the cell phone, Baldwin pulled a pistol out from under a cushion and told appellant to "hold it." Baldwin testified that when appellant saw the gun he turned toward the door, at which point Baldwin attempted to fire the pistol. Because the first chamber was empty, however, the gun clicked but did not fire. Baldwin stated that appellant then turned back toward him and took a step. Then, just as appellant was turning back toward the door, Baldwin pulled the trigger a second time. This time the gun discharged a bullet, which was later determined to have struck appellant in the abdomen. Appellant continued out the door. Baldwin testified that three weeks earlier, appellant had entered his home brandishing a knife and demanded Baldwin's wallet and cell phone. According to Baldwin, this event had scared him and caused him to keep a pistol and rifle nearby. Baldwin also testified that he had not met appellant in any social setting, stating "I never saw him before in my life."

Appellant's version of the events was different. Appellant testified that he had sold Baldwin crack cocaine three weeks earlier and that Baldwin owed him money for the drugs. Appellant stated that he went to Baldwin's house and Baldwin invited him in. When appellant asked Baldwin for the money, Baldwin stated that he did not owe him any money, pulled out a gun, and told appellant to leave. Appellant testified that rather than leave, he picked up a knife that was lying

2

on a table. Appellant stated that he held the knife by his side the whole time, never threatened Baldwin with it, and was never within arm's reach of Baldwin. Appellant claimed that he picked up the knife to show Baldwin he was not going to leave that easily without his money. Appellant also stated that he did not think Baldwin was going to shoot him. After Baldwin told him to leave, appellant grabbed the wallet and phone "to get what he was owed." Baldwin then fired the gun. Appellant testified, "I really didn't think he would shoot me." Appellant also testified that he was surprised when he was arrested and charged with aggravated robbery and asked the officer "why there was an aggravated robbery charge and who was saying [he] robbed someone?"

After trial, the jury found appellant guilty of aggravated robbery and found that he used or exhibited a deadly weapon—a knife—during the commission of the offense. Punishment was assessed at 20 years' confinement. Appellant perfected this appeal. He asserts in four issues that the trial court erred in showing 13 minutes of a video recorded by a police officer's dashboard camera and by refusing his requested instruction on self-defense.

**DISCUSSION**

At trial and over appellant's objection, the State played a 13-minute videotape recorded on the night of the offense by one of the responding officer's dashboard video cameras. The camera was not directed at any people, but the audio portion recorded Baldwin's conversation with the responding officer as the two stood outside Baldwin's house. In his first two issues, appellant asserts that the video should not have been admitted because it was *Brady* material that was not provided to him during discovery. *See Brady v. Maryland*, 373 U.S. 83 (1963). In the alternative, appellant contends in his third issue that even if the video was not *Brady* material, the

3

State was required to disclose it to him pursuant to article 39.14(a) of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 39.14(a) (West Supp. 2012).[1]

The audio portion of the videotape begins with Baldwin stating that he recognized appellant's voice as belonging to the person who entered his house three weeks earlier. The listener can hear Baldwin tell the police officer that appellant was reaching for the door when Baldwin shot him and that the door was not closed all the way. Baldwin reported that he kept an empty chamber in his pistol so that when he pulled the trigger the first time, the pistol did not fire a bullet. The officer then reports to another officer that Baldwin said he fired when appellant was trying to exit the house and that there was no bullet hole in the screen door.[2] Next, Baldwin is heard to say that the suspect has his wallet. A police officer is then heard to report that they have spotted the suspect. Baldwin is then heard to say that he may be having a heart attack, that he got robbed again, and that he may have shot someone. Baldwin states that the suspect is wearing almost the same clothes as

---

[1] This article provides:

> Upon motion of the defendant showing good cause therefor and upon notice to the other parties, except as provided by Article 39.15, the court in which an action is pending shall order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the defendant of any designated documents, papers, written statement by the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies.

Tex. Code Crim. Proc. Ann. art. 39.14(a) (West Supp. 2012).

[2] It is apparent that the police officers were trying to determine whether the bullet had actually hit appellant.

4

he was wearing the last time. Baldwin says on the tape that the first time appellant attempted to rob him did not bother him, but this time he "has so much going on," and that he hopes they get appellant this time. Baldwin then states that he did not want to hurt the intruder but he was not going to let him do this again, and that it was "the same damn man," and "this is the second time and I live alone." Baldwin says that he hoped he did not hurt the intruder too much and that he is not sure whether he is having a heart attack or a panic attack. Next, the listener can hear Baldwin talking to EMS about his physical condition and medical history. The police officer then asks Baldwin if he has ever been robbed before, to which Baldwin responds that three weeks earlier the same guy attempted to rob him, that he recognized his voice, his mannerisms, and the knife he carried. Baldwin stated that the previous time the appellant held the knife so close to his neck that he couldn't see its point. Baldwin then stated that the intruder came "busting through the door" just like last time and that his door had been cracked and held with a bungee cord which the intruder cut and came into the house.

Appellant contends that he was denied due process of law because the State withheld the video in violation of *Brady*. A defendant's due-process rights are violated when the prosecution suppresses evidence favorable to the defendant that "is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87; *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). *Brady* material includes impeachment evidence. *Wyatt*, 23 S.W.3d at 27. Evidence is considered material if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Wyatt*, 23 S.W.3d at 27. A reasonable probability

5

is a probability sufficient to undermine confidence in the outcome of the proceeding. *Wyatt*, 23 S.W.3d at 27. Thus, to prevail on his *Brady* claim, appellant must show: (1) the prosecution suppressed or withheld evidence; (2) the evidence was favorable to appellant; and (3) the evidence creates a reasonable probability of a different outcome. *See id.*

Assuming, without deciding, that appellant has met the first of these elements, we consider whether the video, if disclosed to the defense, contained evidence that was favorable to appellant and that could have created a reasonable probability of a different outcome. Appellant contends that the video contains evidence that would impeach Baldwin's credibility. Specifically, appellant asserts that Baldwin testified that appellant was "heading out the door" when Baldwin shot him. Appellant does not, however, explain how this statement differs in any significant way from Baldwin's statements to the police as recorded by the video, which was that appellant "was reaching for the door" when Baldwin shot him. Having reviewed both, we conclude that Baldwin's trial testimony did not differ materially from his statements to the police on October 19 regarding where appellant was located when Baldwin shot him.

Appellant also argues that Baldwin made a statement in the video that the earlier intrusion did not cause him to be in fear of imminent bodily injury, which presumably could tend to support appellant's assertion that he did not come to Baldwin's house either time to rob him but rather to sell him drugs and collect his money. We disagree that any of Baldwin's statements in the video constituted an assertion that he was not afraid the first time appellant came to his house. When describing that incident, Baldwin recounted that appellant had carried a knife and held it so close to his neck that he could not see the point. In describing the second robbery, he told the responding

6

officer and EMS that he thought he might be having a heart attack or a panic attack. It was within that context that Baldwin said, "It didn't bother me last time. This time, I don't know, I just have so much going on." It is not a reasonable interpretation of Baldwin's statement that he was not afraid or upset during the first encounter. Rather, the only reasonable interpretation is that, unlike the second time, the previous incident did not "bother" him *physically*, i.e., it did not cause him to feel like he was having a heart attack. Baldwin testified at trial that appellant lunged at him with a knife that night and that he was in fear of being stabbed. In the video recorded on October 19, Baldwin expressed that he might be suffering from a heart attack or a panic attack. We conclude there is no material inconsistency between the trial testimony and the videotape recording with respect to how Baldwin was affected by appellant's actions on October 19.

Finally, appellant argues that Baldwin testified at trial that he "had never seen" appellant before but stated in the video that appellant had been in his house three weeks earlier. Appellant asserts that the contested issue in this case was whether appellant and Baldwin knew each other and that the defense was prejudiced by not having the benefit of this inconsistent statement prior to trial. Baldwin testified at trial that appellant had entered his house three weeks before the robbery and that when appellant returned on October 19 he recognized his voice and the knife he carried. Baldwin did not deny at trial that he had had a previous encounter with appellant, but his statement that he "had never seen [appellant] before" was made in response to a question whether the two had met in any *social situation*. Again, Baldwin's trial testimony in this regard is not inconsistent with the video.

In sum, the videotape does not contain evidence favorable to appellant, i.e., evidence that impeaches Baldwin's credibility. As such, the video does not constitute *Brady* material such that the State's failure to provide the video to the defense, if in fact that happened, violated appellant's due-process rights. We overrule appellant's first two issues.

In his third issue, appellant contends the videotape was "willfully withheld from disclosure under a discovery order" and therefore must be excluded from evidence pursuant to article 39.14 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 39.14(a). As an initial matter, we observe that the State represented to the trial court that it had opened its entire file to the defense, which included a copy of the video, and that appellant's counsel had been to the office at least two times to examine the file. Thus, the State disputes that it failed to disclose the video to appellant. Dispositive of this issue, however, is the fact that there was no article 39.14(a) discovery order in place in the present case. Appellant concedes this, stating in his brief that "there was no order under article 39.14 compelling the State to notify appellant of the additional video of the scene." In order for exclusion to be required pursuant to article 39.14(a), evidence must have been willfully withheld from disclosure *under a discovery order. See Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). Because exclusion is an extreme solution, it should not be imposed absent willfulness on the part of the prosecution. *Osbourn v. State*, 59 S.W.3d 809, 816 (Tex. App.—Austin 2001), *aff'd*, 92 S.W.3d 531 (Tex. Crim. App. 2002). Because no article 39.14(a) discovery order was in place, the State could not have acted in willful disregard of a court order. Appellant's third appellate issue is overruled.

8

In his fourth issue, appellant asserts that the trial court erred by refusing to include a self-defense instruction in the jury charge. We review alleged charge error by considering (1) whether error existed in the charge and (2) whether sufficient harm resulted from the error to compel reversal. *See Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003); *Posey v. State*, 966 S.W.2d 57, 60 & n.5 (Tex. Crim. App. 1998). When properly requested, the trial court must instruct the jury on every defensive theory raised by the evidence, and it makes no difference whether such evidence or testimony was produced by the prosecution or the defense or whether such defensive evidence or testimony might be strong, weak, unimpeached, or contradicted. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *Smith v. State*, 676 S.W.2d 584, 586-87 (Tex. Crim. App. 1984). Before a defendant is entitled to a jury instruction on self-defense, however, the defendant must produce some evidence that, when viewed in the light most favorable to the defendant, will support the self-defense claim. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Ferrel*, 55 S.W.3d at 591; *Hill v. State*, 99 S.W.3d 248, 250 (Tex. App.—Fort Worth 2003, pet. ref'd). In other words, a defendant must provide some evidence that he was authorized to use deadly force under either section 9.31 or section 9.32 of the Texas Penal Code. *See* Tex. Penal Code Ann. §§ 9.31, 9.32 (West Supp. 2012).

In the present case, appellant was not entitled to a self-defense instruction under section 9.31 or 9.32. Appellant stated twice during his trial testimony that he "really did not think [Baldwin] would shoot him." He stated that he picked up the knife only to show Baldwin he was not going to leave. To be entitled to a self-defense instruction, the defendant must have reasonably believed that the force he used was immediately necessary to protect him against the other's use or

9

attempted use of force. *See id.* § 9.31(a). By his own testimony, appellant did not have such a belief. Moreover, even if the offense of aggravated robbery could somehow be justified by self-defense, appellant denied that he robbed Baldwin. He testified instead that he was simply collecting money Baldwin owed him. Appellant testified that he was surprised that he was charged with aggravated robbery. In his brief, appellant maintains that he was acting as a "creditor" securing "the collection of a defaulted debt by seizing collateral that [did] not exceed the debt owed." The court of criminal appeals has held that "a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct." *See Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007). Because appellant did not admit to the charged conduct, he was not entitled to an instruction on self defense under section 9.31 or 9.32. The trial court therefore did not err by refusing the requested instruction. We overrule appellant's fourth issue.

## CONCLUSION

Having overruled appellant's four issues, we affirm the judgment of conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   February 22, 2013

Do Not Publish

11