**Opinion filed September 25, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00261-CR

_____

## JAMES WILLIAMS, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No.  C-37,695**

### M E M O R A N D U M   O P I N I O N

The jury found James Williams guilty of the offense of murder.  The jury also found that Williams used a deadly weapon, and it assessed his punishment at confinement for life.  The trial court sentenced him accordingly.  We affirm.

The evidence shows that Williams and the victim, Antonio Villa, had a history of disagreements between them.  On the night that Williams killed Villa, the two of them had an argument.  During the argument, Williams called Villa a thief and a liar.  The argument did not escalate into a physical fight.  After the verbal argument ended, Williams returned to his apartment.    While   in   his

apartment, Williams saw Villa enter Joseph Fischer's nearby apartment. Williams got a steak knife from his kitchen, walked into Fischer's apartment through the open front door, and stabbed Villa in the chest. The knife handle broke off, but the blade remained lodged in Villa's chest.

After he stabbed Villa, Williams went back to his apartment and got another knife. Meanwhile, Fischer ran to a neighboring apartment where Villa's niece Joanne Dominguez lived and told her that Villa had been stabbed. Dominguez called 911. She then met Williams, and he was wielding the second knife. Williams yelled out that he had killed Satan; he also threatened to kill Dominguez. Another neighbor used a baseball bat to eventually chase Williams away.

As an officer was responding to the 911 call, he saw Williams on the side of the road. When the officer stopped Williams, Williams told him, "I did it, I stabbed him. I killed Satan." In a later interview with a detective, Williams admitted that he had stabbed Villa, and he also claimed that Villa was a devil.

In his first issue, Williams argues that the trial court erred when it refused to instruct the jury on the issue of self-defense. The State argues that there was no evidence to support such an instruction.

A trial court must charge the jury fully and affirmatively on the law applicable to every issue raised by the evidence. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The trial court must instruct the jury "on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks that the testimony is not worthy of belief." *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007). An issue is "raised by the evidence" if "there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that th[e] element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). But, as far as self-defense is

concerned, "if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue." *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

Section 9.31 of the Texas Penal Code authorizes the use of force in self-defense "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a) (West 2011). To use deadly force in self-defense, the defendant must be authorized to use force under Section 9.31 and also must reasonably believe that his action is immediately necessary to either protect himself from the other's use or attempted use of deadly force or to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. *Id.* § 9.32(a). Deadly force is the "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3).

Williams used deadly force against Villa. Therefore, he was entitled to an instruction on self-defense only if the evidence satisfied the requirements of Sections 9.31 and 9.32. *Preston v. State*, 756 S.W.2d 22, 25 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). Williams does not argue that Villa committed or attempted to commit any of the offenses specified in Section 9.32(a). Therefore, unless there is evidence that would support a belief that Villa used or attempted to use deadly force, Williams was not entitled to a jury instruction on self-defense. *Werner v. State*, 711 S.W.2d 639, 644 (Tex. Crim. App. 1986); *Preston*, 756 S.W.2d at 25.

To show that the issue of self-defense was raised by the evidence, Williams directs us to testimony that there was an ongoing feud between Williams and Villa. He also directs us to evidence regarding his "feelings and thoughts as to the threat

he believed that [Villa] was to [him]." The State argues that any evidence of an ongoing feud is insufficient to raise the issue of self-defense because Villa did not have a weapon or pose a danger to Williams at the time of the stabbing.

Williams stated in his interview with police that Villa had hit him with a shovel on a previous occasion, but he did not say when this fight occurred. Furthermore, Williams did not claim that Villa had a shovel or any other weapon when he stabbed Villa. However, Williams did say that his argument with Villa immediately prior to the assault did not involve a physical altercation. According to Williams, he went to his apartment after the argument. He also told the detective that, when he left his apartment with the knife, "I knew I was going to kill him." Williams walked into Fischer's apartment and stabbed Villa in the chest. Villa was sitting in a chair watching television when Williams stuck the knife in his chest.

Williams has not directed us to, nor have we found, any facts in the record that, if believed, would raise the issue of self-defense in response to deadly force. There is no evidence to support a belief that Villa had a deadly weapon at the time of the stabbing or that Villa did anything to place Williams in fear of death or serious bodily injury.

Williams cites *Granger v. State*, 3 S.W.3d 36 (Tex. Crim. App. 1999); *Hayes v. State*, 728 S.W.2d 804 (Tex. Crim. App. 1987); and *Hill v. State*, 99 S.W.3d 248 (Tex. App.—Fort Worth 2003, pet. ref'd), to support his contention that he is entitled to a self-defense instruction. *Hayes*, *Hill*, and *Granger* all turned on the reasonableness of the accused's belief. There were facts in *Hayes* and *Hill* that, if believed, would support a belief that deadly force was immediately necessary, and whether that belief was reasonable was an issue for the jury to decide. *See Hayes*, 728 S.W.2d at 808; *Hill*, 99 S.W.3d at 250–52. And, in *Granger*, the defendant testified that, when he began shooting at a parked car, he

"didn't think that anybody was inside the car." *Granger*, 3 S.W.3d at 37 (emphasis omitted). The defendant's testimony, if believed, supported an instruction on the defense of mistake of fact, and the reasonableness of his belief was a fact question for the jury. *Id.*

Williams contends that the trial court "made a judgment about the evidence presented in this case" instead of submitting the issue to the jury. However, this case is distinguishable from those cited by Williams because the issue here does not turn on the reasonableness of Williams's belief regarding the nature of anything done by Villa that would support a self-defense instruction. There is no evidence in the record to support a belief that Villa used or attempted to use deadly force or that he committed or attempted to commit any of the offenses enumerated in Section 9.32(a). Because the issue was not raised by the evidence, the trial court did not err when it refused to instruct the jury on the issue of self-defense. Williams's first issue on appeal is overruled.

In his second issue on appeal, Williams claims that, because of violations of Article 49.25 of the Code of Criminal Procedure, the trial court erred when it denied his motion to suppress evidence contained in the autopsy report. Specifically, Williams complains that the autopsy was not performed by an "authorized and qualified deputy medical examiner," and he also complains about the failure to conduct an inquest.

According to Article 49.25 of the Texas Code of Criminal Procedure, a "medical examiner may, subject to the approval of the commissioners court, employ such deputy examiners, scientific experts, trained technicians, officers and employees as may be necessary to the proper performance of the duties imposed by this Article upon the medical examiner." TEX. CODE CRIM. PROC. ANN. art. 49.25, § 3 (West Supp. 2014).

Dr. Nathan C. Galloway, the medical examiner for Ector County, testified at the suppression hearing that he "sign[s] the death certificate for the manner and cause of death" but that he does not perform autopsies as part of his duties. Instead, the commissioners court independently contracts with others, such as the Permian Basin Forensic Center, to perform autopsies. Dr. Galloway testified that contracting with others to perform autopsies is necessary to the proper performance of his duties. Dr. John Stash, a board certified anatomic and forensic pathologist, was employed by Forensic Medical Management Services to perform autopsies and to determine the cause of death in various types of cases. Dr. Stash performed the autopsy in question at the Permian Basin Forensic Center in Ector County.

Williams recognizes that the statute permits medical examiners to employ deputy examiners, but he references evidence that Dr. Stash was employed by a group of doctors outside of Ector County to support his contention that "the autopsy was done by someone not authorized to do so in accordance with this statute in Ector County, Texas." We construe this as an argument that the statute permits the medical examiner to "employ such deputy examiners" as necessary but that Dr. Stash was not employed by Ector County. We note that Williams does not challenge Dr. Stash's medical qualifications to give an expert opinion on issues related to Villa's death, nor does he challenge the findings on the basis that Dr. Stash was employed by a professional association rather than by the county directly. Williams's challenge is limited to the admissibility of the report under the statute.

The statute permits the medical examiner to employ both "deputy examiners" and "employees." Therefore, there is no requirement that deputy examiners must be employees. *See Brown v. State*, 943 S.W.2d 35, 36 (Tex. Crim. App. 1997) (The starting point in any statutory construction analysis is the plain language of the statute in question.). However, even if Dr. Stash was not

authorized to conduct the autopsy in this case, we have previously decided that a failure to comply with Article 49.25 has no effect on the admissibility of an autopsy report. *See Clark v. State*, No. 11-10-00335-CR, 2012 WL 5448189, at *5 (Tex. App.—Eastland Nov. 8, 2012, pet. ref'd) (mem. op., not designated for publication).

Williams also contends that the autopsy report was inadmissible because the autopsy was performed without an inquest. An inquest is an investigation to determine whether a death was caused by an unlawful act, and a medical examiner is required to hold an inquest when a person is killed. TEX. CODE CRIM. PROC. ANN. art. 49.01(2) (West 2006), art. 49.25, § 6(a)(2) (West Supp. 2014). The parties in this case stipulated that an inquest was not performed as required by Article 49.25. Be that as it may, as with Williams's first contention, a failure to comply with Article 49.25 "does not affect the admissibility of the autopsy results." *See Clark*, 2012 WL 5448189, at *5. Because Williams only challenges the admissibility of the report based on violations of Article 49.25 that have no effect on admissibility, we cannot conclude that the trial court erred when it denied the motion to suppress. Williams's second issue on appeal is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


September 25, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.