

# NUMBER 13-09-00622-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

EFRAIN PUENTE,                                                             Appellant,

v.

THE STATE OF TEXAS,                                                       Appellee.

### On appeal from the 357th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

Appellant Efrain Puente was indicted for the offense of murder.  *See* TEX.

PENAL CODE ANN. § 19.02(b)(1) (West 2003).  He entered a plea of "not guilty."  After

the jury rejected appellant's justification theory of self-defense, it found him guilty of

murdering Francisco Losoya. During the punishment phase, the jury found that appellant did not cause Losoya's death under the immediate influence of sudden passion and assessed punishment at life in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000. *See id.* § 19.02(d). By four issues, which we renumber as two, appellant complains that the evidence is insufficient to support his conviction. We affirm.

## I. BACKGROUND[1]

The evidence established that appellant and his wife, Teresa Puente, lived together in a mobile home in El Ranchito, Texas, with their two children and Teresa's four older children. Approximately three weeks before the incident, appellant and Teresa argued. Teresa told appellant that she wanted him to leave. Appellant went to Houston, Texas, to stay with his mother and find work. On May 13, 2008, at approximately 4:00 p.m., appellant called Teresa and asked to see his children. Teresa agreed to the visit but told appellant that she hated him. Appellant arrived at the house later that day.

### A. Teresa Puente's Testimony

According to Teresa, Francisco Losoya had been staying at the house for about one week when appellant called her. Losoya was wearing appellant's clothes because he arrived at Teresa's house without a change of clothing. Teresa also testified that Losoya knew appellant was coming to see his children, and Losoya

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

threatened to kill appellant.

At trial, Teresa testified that, on May 13, she was outside with three of her children. Teresa's and appellant's two children were inside with Teresa's oldest daughter. According to Teresa, Losoya had been drinking and was also outside. Teresa testified that she did not see Losoya holding a knife that afternoon, except for when he was peeling lemons. Losoya placed some of his knives on the top stair by the back door of the house. Teresa heard a scuffle that lasted "not even minutes," saw Losoya and appellant struggling and fighting, grabbed her daughter, and ran to get help. Teresa also testified that she did not see appellant holding a knife. According to Teresa, appellant ran when he heard her scream "Police." She testified that Losoya chased appellant until appellant got into a car where another man was waiting, and appellant and the other man left.

On cross-examination, Teresa identified, read into the record, and testified, without objection, about certain portions of a written statement she had given at or near the time of the incident.[2] Teresa agreed that her written statement contained the following information that differed from her trial testimony: (1) appellant stabbed Losoya while Losoya was sitting on the steps; (2) appellant was the first to pull out a knife, and he began stabbing Losoya; and (3) appellant continued to stab Losoya. Teresa also agreed that her previous statement reflected that appellant was responsible for the stabbing. She testified, however, that although she told the

---

[2] It is unclear from the record whether Teresa was testifying about a May 13 statement she gave while sitting in a police car outside the house or from a statement given to an investigator at the sheriff's office on May 16, 2008. Nonetheless, Teresa did testify regarding the statements she gave to police.

3

officers that Losoya was playing with knives, that was not included in her written statement. She also agreed that nowhere in her written statement did she say that appellant stayed to help Losoya, that Losoya started the fight, or that Losoya had any weapon during the stabbing.

Recanting what she said in her prior statement, Teresa testified that she gave her statement to investigators out of fear of America Garcia, Losoya's mother, who had allegedly threatened Theresa. She also testified that if she blamed appellant, "[Garcia] would never hurt [her] because there was somebody that was guilty." Teresa agreed that, after fighting with Garcia, she changed her story. When asked, "So were you lying then or are you lying now, ma'am?," she answered, "No. I was lying back then."

On redirect, Teresa testified that she had tried to tell an officer that the handwritten statement was not true, but he informed her that if she changed anything, she would be locked up and would lose her children. When asked which one she feared more, the officer or Garcia, Teresa testified, "[Garcia], but I don't care because I want to tell the truth because I have been like I'm in a jail."

**B.  Appellant's Testimony**

Appellant testified at trial that after talking with Teresa by phone about seeing his children, a friend drove him to the house. When appellant arrived, he found a man wearing camouflage pants inside his home. Appellant thought this man had a knife and was breaking into his house. Appellant explained that because of what he thought this man might have done to his family and because the man appeared to be

4

running away, appellant went toward him. According to appellant, the man took out a knife and started to attack him. Appellant testified that what began in the trailer progressed to the backyard when both men fell out the back door of the mobile home. According to appellant, he fell on top of the man. They wrestled, got up, fought, and fell back down for approximately three or four minutes.

Appellant testified that he took a knife away from the man, but then the man took the knife back. According to appellant, the man got up and started to run toward the side of the mobile home. Appellant testified that he thought the man was going to get something else to "finish trying killing" him, so he got in the car and left. Appellant explained that he had blood on his arms—his blood where he had been cut and some other blood. According to appellant, he told his friend that "this man attacked me. I had to defend myself." Appellant testified that he also told his friend that "this man tried to stab me and had cut me in my arm." Appellant claimed that he had no weapons on him that day and that he did not know Losoya died until he was arrested.

## C. Rogelio Becerra's Testimony

Rogelio Becerra, Teresa's neighbor, testified that he was leaving for work on May 13, 2008, when he heard a scuffle in his neighbor's yard and heard his neighbor screaming, "they're going to kill him." After Becerra saw one male run to a car and the car "haul a\*\*," he called for help.

## D. America Garcia's Testimony

Garcia testified that she received a call from Teresa and left immediately to see what happened. She explained that Teresa and Losoya were friends and that "[h]e

was paying rent to Teresa so he could go work [with transportation arranged by Teresa]." Garcia agreed that she and another son assaulted Teresa at Losoya's funeral. But, according to Garcia, she never threatened Teresa. Garcia testified that she saw Teresa approximately three weeks before trial, and Teresa had said that "she was afraid to come [to trial] because of her family."

**D. Officer Marco Antonio Gonzalez's Testimony**

Officer Gonzalez, the intake officer at the Cameron County Jail, testified that when appellant arrived at the jail, he took him to the nurse to be checked for injuries. At that time, appellant asked him something in Spanish, which was interpreted as slang to mean "to knife, to cut with a knife." Officer Gonzalez testified that he was familiar with some street language and that, to him, "it meant that [appellant] had stabbed a young kid." Appellant was assessed by the nurse, who noted cuts on the inside of appellant's left arm. Officer Gonzalez testified that, while being treated, appellant spoke in Spanish and said what was interpreted as the following: "When we were knifing the young guy, I jumped over the fence and I got cut." When asked if appellant made any other admissions that night, Officer Gonzalez replied, "No, ma'am. He was just admitting he had stabbed somebody."

**E. Norma Jean Farley, M.D.'s Testimony**

Dr. Farley, a forensic pathologist, testified that she conducted the autopsy on Losoya. She identified nine stab wounds–-wounds to Losoya's jaw, left backside, left frontal scalp, anterior left chest, mid chest, left abdomen, left arm, and hip. Dr. Farley described two wounds on Losoya's left forearm as defensive-type stab wounds. She

6

also identified contusions on Losoya's shoulder. Dr. Farley testified that the fatal wound to the anterior left chest, which in her opinion was made by a knife, was four-and-a-half inches deep following a lethal wound track, going through "the left lung and into the sac that sits around the heart and into the pulmonary artery . . . ."

## II. SUFFICIENCY OF THE EVIDENCE

By two issues, appellant claims that the evidence is insufficient to support his murder conviction. By his first issue, appellant specifically challenges the sufficiency of the evidence to establish the intent element of the offense, *see* TEX. PENAL CODE ANN. § 19.02(b)(1), and, by his second issue, the jury's rejection of his self-defense claim. *See id.* § 9.32 (a)(3)(A) (West Supp. 2010).

### A. Standard of Review

Although appellant challenges both the legal and factual sufficiency of the evidence, in light of the Texas Court of Criminal Appeals's 2010 opinion in *Brooks v. State*, we will conduct only a legal sufficiency review. *See* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.). *Brooks* held that there is "no meaningful distinction between the . . . legal-sufficiency standard and the . . . factual-sufficiency standard, and these two standards have become indistinguishable." *Id.* at 902. A legal sufficiency standard is "the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element in a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary . . . are overruled." *Id.* at 912.

When conducting a sufficiency review, a court must ask whether "any rational

7

trier of fact could have found the essential elements of the crime beyond a reasonable doubt"—not whether "it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). A sufficiency analysis requires the court to view all of the evidence in "a light most favorable to the verdict and to determine whether a rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt." *Id.*; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight or credibility of the evidence, nor do we substitute our own conclusions for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc). Instead, we resolve any inconsistencies in the evidence in favor of the final judgment and consider whether the jury reached a rational decision. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). As

8

indicted in this case, appellant is guilty of murder if he intentionally or knowingly caused the death of an individual by stabbing him with a knife or other unknown object. *See* TEX. PENAL CODE ANN. § 19.02(b)(1).

## B. Applicable Law

### 1. Intent

> Intent and knowledge are fact questions for the jury, and are almost always proven through evidence of the circumstances surrounding the crime. *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984) [(en banc)]; *Mouton v. State*, 923 S.W.2d 219, 223 (Tex. App.—Houston [14th Dist.] 1996, no pet.). Intent may be inferred from words and conduct of the accused. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991) [(en banc)]. Intent to kill may be inferred from use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result. *Flanagan v. State*, 675 S.W.2d 734, 744 (Tex. Crim. App. 1984) [(en banc) (op. on reh'g)]; *Bell v. State*, 501 S.W.2d 137, 138-39 (Tex. Crim. App. 1973).

*Childs v. State*, 21 S.W.3d 631, 635 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *see Guevara*, 152 S.W.3d at 49-50.

### 2. Self-Defense

One may use force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31 (West Supp. 2010). This includes using deadly force against the other if a reasonable person in the actor's situation would not have retreated and when and to the degree that "he reasonably believes" the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a).

When a defendant asserts a claim of self-defense, the State has the ultimate

9

burden of persuasion.  *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2007); *Miller v. State*, 177 S.W.3d 177, 183 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). The burden of persuasion does not require the production of evidence; it requires only that the State prove its case beyond a reasonable doubt.  *Zuliani*, 97 S.W.3d at 594. "The issue of self-defense is a fact issue to be determined by the jury, and a jury is free to accept or reject the defensive issue, even if the evidence is uncontroverted."  *Hill v. State*, 99 S.W.3d 248, 252 (Tex. App.—Fort Worth 2003, pet. ref'd) (citing *Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994)).  When a jury finds a defendant guilty, there is an implicit finding against the defensive theory.  *Zuliani*, 97 S.W.3d at 594.  When reviewing the sufficiency of the evidence concerning the jury's rejection of self-defense, "we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt."  *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (en banc); *Lee v. State*, 259 S.W.3d 785, 791 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

## C.  Discussion

### 1.  Intent

By his first issue, appellant contends that the evidence is insufficient to establish the element of intent beyond a reasonable doubt and is, therefore, insufficient to support the jury's verdict.  Appellant asserts that there is no evidence to establish that he acted with the intent to murder Losoya, rather than to just defend himself.

10

Here, the evidence establishes that appellant and Teresa had been separated for approximately a month. Appellant went to see his children. Shortly before he arrived, appellant talked with Teresa and was told that he could see his children but that Teresa hated him. Appellant found Losoya, a man appellant did not know, at the house where his wife and children lived. Losoya was wearing appellant's clothes. This is evidence of circumstances surrounding the crime which could have established appellant's intent to murder Losoya. *See Guevara*, 152 S.W.3d at 50 ("Motive is a significant circumstance indicating guilt.").

Although it is undisputed that appellant and Losoya fought, Teresa testified that she saw neither man with a knife while they fought. However, Teresa also testified at trial that her statement to the police included the following: that appellant was the first to pull out a knife; that he began stabbing Losoya while Losoya sat on the steps; and that appellant continued to stab at Losoya. Appellant also testified that, at some point during the fight, he had the knife; he took it away from the man. And Officer Gonzalez testified that appellant admitted he had stabbed somebody. Therefore, the jury could have determined that appellant used a deadly weapon. *See Childs*, 21 S.W.3d at 635. Moreover, Losoya's nine stab wounds, one of which was a four-and-a-half lethal knife wound, were inflicted in a manner that could have and did result in death. Appellant only received one cut on his arm, and there is conflicting testimony as to how he received that cut—from the fight or from jumping over the fence. No one else was involved in the fight. The jury could have inferred intent to kill from this evidence. *See id.* Moreover, appellant did not immediately call 911 or an ambulance after

11

allegedly stabbing Losoya in self-defense. Instead, according to Teresa's neighbor, when Teresa yelled for someone to call the police, appellant fled the scene in haste. Intent can be inferred from such conduct. *See Hardesty v. State*, 656 S.W.2d 73, 77-78 (Tex. Crim. App. 1983) ("Flight is also a circumstance indicating guilt.").

We are to view all of the evidence in "a light most favorable to the verdict and to determine whether a rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19; *see Laster*, 275 S.W.3d at 517. The jury weighed conflicts in testimony and resolved them against appellant. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Beckham*, 29 S.W.3d at 151. We will neither reevaluate that determination nor substitute our own conclusions for those of the jury. *See King*, 29 S.W.3d at 562. Instead, while the record supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *See Jackson*, 443 U.S. at 326. Doing so, we conclude that, in this case, a rational trier of fact could have found, beyond a reasonable doubt, that appellant intentionally caused the death of Losoya by stabbing him with a knife. *See id.* at 318-19. We overrule appellant's first issue.

## 2. Self-Defense

By his second issue, appellant claims that the evidence is insufficient to support the jury's rejection of his self-defense claim. He specifically contends that "the evidence shows that any acts [appellant] committed which were acts dangerous to . . . Losoya's life, were acts made in self-defense. [Appellant] testified he acted in

12

self-defense and did not know . . . Losoya had died." Appellant asserts that he "had no choice but to use the force to defend himself which was, at the very least, equal to the force that was being inflicted upon him by . . . Losoya," who was trying to stab him. We disagree.

As set out above, although Teresa testified that Losoya had placed some knives on the outside stairs, the only evidence that Losoya had a knife when he fought with appellant came from appellant's testimony. Losoya was stabbed nine times while appellant received only one cut, which the jury could have determined occurred when he jumped over the fence. Even if appellant's testimony that Losoya had a knife was uncontroverted, the jury was free to reject appellant's self-defense claim. *See Hill*, 99 S.W.3d at 252. The jury could have concluded that Losoya's actions were not so threatening to appellant at that time that appellant reasonably believed that his actions were necessary to protect himself against Losoya. *See* TEX. PENAL CODE ANN. § 9.31. In this case, a rational jury could also have chosen to disbelieve appellant's testimony that it appeared to him that Losoya had a knife when he first saw him in the trailer and when they fought; that he had to defend himself against Losoya's attempted use of deadly force; and that a reasonable person in that situation would not have retreated. *Id.* § 9.32(a).

Although appellant may have perceived things differently, the evidence is, at best, conflicting with regard to whether Losoya engaged in any physical attack on appellant that would have justified appellant's use of deadly force against him. The jury could have rejected the defensive evidence and concluded that appellant suffered

13

nothing life-threatening at the hands of Losoya at or near the time appellant repeatedly stabbed and killed him. *See Hill*, 99 S.W.3d at 253.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant intentionally caused Losoya's death, *see Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914, and that a rational jury could have found against appellant on the self-defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. Accordingly, we conclude that the evidence is sufficient to support the jury's finding of guilt and its rejection of appellant's claim of self-defense. We overrule appellant's second issue.

## VI. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
9th day of June, 2011.

14